### STATE of Maine
### v.
### John F. ASHE, Jr.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1980.

Decided Feb. 4, 1981.

---

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Maryellen Black, Law Student Intern, Portland, for plaintiff.

Anthony Irace, Portland (orally), for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Defendant John F. Ashe, Jr. has appealed from a judgment of conviction entered in the Superior Court (Cumberland County) on the verdict of a jury finding him guilty of the crime of robbery committed with the use of a firearm, in violation of 17–A M.R.S.A. § 651(1)(B) and § 1252(5).

We deny the appeal and affirm the judgment of conviction.

On the evidence the jury was entitled to find the following facts.

Sometime before 1:30 P.M. on October 30, 1979, the South Portland police were informed that persons in a blue buick, which bore the Massachusetts registration 687CGM and was parked beside a South Portland restaurant, appeared to be in possession of a shotgun. At approximately 1:30 P.M. that same day two or three men robbed the LaVerdiere's Drugstore in South Portland. The report was that at least one of the robbers was carrying a shotgun. Shortly after the police had broadcast a description of the blue buick, State police officers observed a car fitting the broadcast description. It had two occupants and appeared to be riding very low in the rear. The police stopped the car and ordered the man and woman who were the occupants to step outside the vehicle. Observing shotgun shells and a handgun in the car, the police opened the trunk of the car. They saw the defendant and another man crouched inside the trunk. They also found a bottle of percodan,[1] a shotgun and a plastic garbage bag.[2] All four occupants of the car were transferred to the custody of the South Portland police.

Having been indicted on November 9, 1979 for armed robbery, defendant, on December 7, 1979, filed a motion to suppress inculpatory statements made to police officers during an interrogation conducted on the day of the robbery. Defendant contended that because he was under the influence of narcotics and other drugs at the

---

1. Medical testimony introduced at the suppression hearing explained that percodan is a semi-synthetic derivative of codeine, composed of aspirin, codeine and phenacetin, and that it is used primarily as a painkiller.

2. We have previously discussed the Fourth Amendment issues raised in this case. In *State v. Blais*, Me., 416 A.2d 1253 (1980), on an interlocutory appeal from a pretrial order, we held that the police had probable cause to stop the car, and that finding only a driver and a single passenger while noticing that the rear end of the car was sagging, the police had probable cause to search the trunk. We further concluded that a warrantless search of the plastic garbage bag taken from the trunk constituted an unlawful search, and that the Superior Court acted without error in suppressing the contents of the trash bag.

time of the interrogation, his statements to police were not the product of a rational intellect and a free will. After a hearing, the Superior Court denied the motion to suppress. At defendant's trial his inculpatory statements to the police were admitted in evidence.

As his only point on appeal defendant asserts that the refusal to suppress the inculpatory statements he made during police interrogation was error because the evidence was insufficient to justify a finding by the presiding justice that beyond a reasonable doubt defendant had in fact waived his constitutional rights. We reject this contention.

Defendant was arrested during the afternoon of October 30, 1979 and was held in the lock-up area of the South Portland police station until approximately 6:00 P.M. He was then brought to an interview room where he was joined by officers Roche and Guimont. Immediately, defendant was informed of his *Miranda* rights. He was asked if he understood them, and he responded affirmatively. Defendant also stated that he was willing to talk with the detectives without having a lawyer present.

Both officers testified that defendant told them that he was a heroin addict and that he had taken 50 percodan tablets during the day.[3] Hearing this, Officer Roche asked defendant if he wanted to be seen by a doctor. Defendant refused the offer of medical attention, explaining that the percodan did not bother him and that he was concerned only about heroin withdrawal symptoms he expected to experience the next day. Both officers further testified that during the course of the 45 minute interrogation defendant appeared to them to be alert and rational, and he provided them with a narrative description of events and responded coherently to questions. The officers added that even though defendant exhibited a certain degree of nervousness,

nothing suggested that he was disoriented, mentally confused, or physically ill.

At the close of the interview the officers transported defendant to the Cumberland County jail. The jailer, upon being informed of defendant's drug history, refused to admit him until he had been examined at Maine Medical Center. Defendant was then taken to Maine Medical Center where he was examined in the emergency room by surgical resident Dr. John Atwood. At the suppression hearing, Dr. Atwood offered the following description of the defendant's condition at the time of this examination:

"A. Well, I basically asked him how he felt.

"Q. What did he say?

"A. Well, he was quite oriented. He knew where he was. He felt a bit warm. He was perspiring. He was not dizzy. He had no visual complaints, not delusional at all, no abdomen pain.

"Q. He was not delusional at all?

"A. He was not delusional.

"Q. All right.

"A. No abdomen pain, no chest pain. He basically was just a bit nervous at that time."

Defendant makes no claim that the police used physical force or psychologically coercive tactics against him, or that they elicited his statements by making threats or promises. Rather, the issue raised is that defendant's actual condition, as the result of his addiction and alleged consumption of percodan, was such that his objectively appearing voluntary, knowing and intelligent waiver of rights was not, in subjective reality, such a waiver.

On the basis of the evidence presented at the suppression hearing the presiding justice found that

"at the time of the interrogation by the police, Mr. Ashe was in the condition to understand what was happening, what he was saying and that his conduct, his re-

---

**3.** Defendant's statement to the officers that he had taken 50 percodan tablets is the only evidence that he had actually taken such a drug in that quantity.

sponses and his acquiescence to the interrogation was not a delusional, irrational or uncontrolled, unintelligent thing."

We interpret the justice's resort to double-negative phrasing as signifying the affirmative finding that at the time of the interrogation, defendant was physically and mentally able both to understand the officer's description of his rights and to waive them and that he did make a voluntary, knowing and intelligent waiver of them.

The evidence was sufficient to support these findings by the presiding justice as having been made beyond a reasonable doubt, in accordance with the quantum of proof prescribed by *State v. Collins*, Me., 297 A.2d 620 (1972).[4] Consumption of, or addiction to, drugs does not per se render invalid an otherwise sufficient waiver of rights. *State v. Gordon*, Me., 387 A.2d 611 (1978). The particular circumstances of each case must be evaluated to determine whether a defendant's drug-related condition made him incapable of acting voluntarily, knowingly and intelligently. In the present case all of the people who had contact with the defendant at the time of the interrogation testified that he was lucid and rational. Not only was he able to respond coherently to questions, he was able to engage in a narrative account of the events in question. The record is devoid of evidence that such use as defendant may have made of drugs had caused actual impairment of his physical or mental condition at the time of the interrogation.

The entry shall be:

Appeal denied.

Judgment affirmed.

All concurring.

**4.** The presiding justice did not state expressly that the quantum of proof on which he arrived at his findings was "beyond a reasonable doubt." Neither, however, did he say anything suggesting that he used any lesser quantum of proof. In these circumstances, since we conclude that the evidence was sufficient to support the findings of the justice in accordance with the proof-quantum "beyond a reasonable doubt", we need not remand the case to have the presiding justice make an express statement that, in conformity to legal requirements, he made his findings beyond a reasonable doubt. *See State v. Collins, supra,* 297 A.2d at 630; *State v. Smith,* Me., 415 A.2d 553, 557–58 (1980).