**STATE of Maine**

v.

**Robert CAOUETTE, Jr.**

Supreme Judicial Court of Maine.

Argued May 6, 1982.

Decided June 23, 1982.

William R. Stokes, Sp. Asst. Atty. Gen. (orally), Fernand LaRochelle, Asst. Atty. Gen., Augusta, for plaintiff.

Marshall, Raymond, Beliveau, Dionne & Bonneau, John Beliveau, Judith Andrucki (orally), Lewiston, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

The State appeals pursuant to 15 M.R. S.A. § 2115–A (1980) and M.R.Crim.P. 37B

from an order of the Superior Court (Androscoggin County) suppressing statements made by the defendant when first placed in custody.[1] We deny the appeal.

I

Defendant was indicted on April 14, 1981 for murder (17–A M.R.S.A. § 201(1)(A) and (B) (Supp.1981)) and for hindering the apprehension and discovery of another person charged with murder (17–A M.R.S.A. § 753(1)(C) (Supp.1981)). Defendant was taken into custody at the Androscoggin County Jail on the afternoon of the day the indictment was returned. At 8:30 in the evening defendant became ill and was allowed to go to the medical room of the jail. The Deputy Sheriff in charge examined defendant and was told by defendant that he had been vomiting since the supper hour. Defendant was permitted to call his wife, and after the call he began to cry. Stating that he was feeling ill again, he asked to stay in the medical room and talk. The deputy testified that he repeatedly told defendant that he did not want to discuss his case because he was not the investigating officer. He also told defendant that anything he said could be used against him. Subsequently defendant made admissions which could be considered inculpatory. The deputy testified that after each such statement he repeated the warnings. There is no testimony indicating that the deputy asked any questions, although he did offer to contact the investigating officers. Finally, unable to stop the defendant from talking, the deputy returned him to the cell area. Defendant testified at the suppression hearing that he did not remember much about the events following his arrest because he was sick, frightened, and unfamiliar with his surroundings. He stated that he had not intended to discuss the case with anyone.

Defendant moved to suppress the oral statements made by him on April 14, 1981 on the grounds that they were not voluntary and that their use violated his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.[2] The court granted the motion and suppressed the statements. Based upon a consideration of all the circumstances, including the defendant's illness, emotional state and unfamiliarity with the custodial surroundings, the presiding justice ruled that he was unable to conclude beyond a reasonable doubt that the April 14th statements were voluntary. The justice did not find that the statements were compelled or elicited by police conduct. The question is therefore clearly posed: In the absence of police compulsion or elicitation, may a statement nevertheless be held to be involuntary because the circumstances of incarceration and the physical and emotional condition of the defendant preclude a finding that his statements resulted from the exercise of free will and rational intellect? The Superior Court ruled affirmatively and until now this Court has never squarely addressed the issue.

II

■ The prosecution argues that applicable federal and state law does not prohibit the use of a statement volunteered by a defendant under the circumstances presented in this case. It is the view of the State that in order for a defendant's statement to be considered involuntary, police elicitation is necessary. It is contended that the trial court's decision to suppress is based on a misconception of the due process concept of voluntariness.[3] We disagree.

1. The motion also requested suppression of statements made by defendant in March and in September. Those portions of the motion were denied and are not involved in this appeal.

2. We construe the challenge that the statements were not voluntary as being broad enough to fairly implicate the self-incrimination provisions of both the Constitution of Maine, Art. I, § 6 and the United States Constitution.

The Sixth Amendment claim was not pursued on appeal and we have no occasion to discuss it.

3. This statement of the issue is taken from the brief submitted by the State. It reflects a misconception of the source of the constitutional protection in proceedings before State courts and seems to assume that voluntariness is only a requirement of due process.

The State relies principally upon a number of United States Supreme Court decisions which suggest that voluntariness is linked to freedom from compulsion or elicitation by the police. Undoubtedly these cases have as their factual foundations conduct by police and prosecution in securing statements from a defendant. The descriptions of the minimal standards of voluntariness and the procedural standards mandated for proving voluntariness reflect these factual contexts and for the most part are aimed at deterring impermissible police conduct. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

To accede to the State's request to construe such opinions as expressing a limitation upon the scope of the privilege against self-incrimination would be to stand the state-federal relationship and the Fourteenth Amendment to the Constitution of the United States on their heads. In *State v. Collins*, Me., 297 A.2d 620 (1972), this Court noted that federal decisions do not serve to establish the complete statement of controlling law but rather to delineate a constitutional minimum or universal mandate for the federal control of every State. The relationship between federal and state control is demonstrated clearly by *Collins* and the preceding Supreme Court decision in *Lego v. Twomey, supra.* In *Lego* the United States Supreme Court held on due process grounds that the prosecution must prove by a preponderance of the evidence that a defendant's statement was voluntary in order for it to be admissible. The Supreme Court stated, however: "Of course, the States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they find at stake." In *Collins* this Court exercised its authority and adopted the more stringent standard of proof beyond a reasonable doubt to secure more effectively the guarantee of freedom from self-incrimination.

Although *Lego* and *Collins* deal with a procedural issue, the same state-federal relationship prevails in determining the substantive content of the privilege against self-incrimination to be applied in the courts of Maine. It must be remembered that the privilege exists in this case by virtue of the Maine Constitution. The Fifth Amendment is a limitation upon the federal government and has no direct reference to state action except to the extent incorporated as a requirement of due process under the Fourteenth Amendment. The maximum statement of the substantive content of the privilege and the requirements of voluntariness must be decided by this Court—as a matter of Maine law.

Our prior decisions dealing with the term voluntary have not required that we address the latent conceptual ambiguity exposed by this case. In *State v. Collins*, 297 A.2d at 626, n.5, we explicitly recognized that a statement could be involuntary even where police conduct was exemplary. The holding was premised upon an underlying value broader than the need to deter lawless police conduct:

> The constitutional privilege against self-incrimination ... reflects a high priority commitment to the principle that excluded as available to government is any person's testimonial self-condemnation of crime unless such person has acted "voluntarily" i.e., unless he has "waived" his constitutional privilege against self-incrimination *by choosing, freely and knowingly, to provide criminal self-condemnation by utterances from his own lips.*

*Id.* at 626 (emphasis added).

Since the *Collins* decision, most cases presented to this Court have arisen under circumstances involving some form of police conduct or interrogation. *See, e.g., State v. Bleyl*, Me., 435 A.2d 1349 (1981); *State v. Ashe*, Me., 425 A.2d 191 (1981); *State v. Theriault*, Me., 425 A.2d 986 (1981); *State v. Catlin*, Me., 392 A.2d 27 (1978); *State v. Tardiff*, Me., 374 A.2d 598 (1977). A case so postured neither generates nor requires an all-inclusive definition of voluntariness.

The rarity of cases claiming compulsion in the absence of police conduct undoubtedly accounts for the paucity of Maine law on the subject. In *Gladden v. Unsworth*, 396 F.2d 373, 380 (9th Cir. 1968) the Ninth Circuit concluded that the same definitional ambiguity under federal case law was occasioned by the same phenomenon:

> In these [referring to the U.S. Supreme Court decisions relied upon by the State in the present case] and most other cases where the voluntariness of a confession has been discussed, there has been the element of police interrogation. Where there is such interrogation, the likelihood of finding coercion and hence, lack of voluntariness, is enhanced. But, in our opinion, voluntariness is not necessarily established by proving that the confession was spontaneous or by proving the absence of an improper purpose on the part of the questioning officers.

Despite the absence of definitional precision in the cases following *Collins*, opinions such as *Ashe* and *Bleyl* give rise to the clear implication that factors such as drug use, which are totally independent of police conduct, could in certain circumstances negate the free will and rational intellect necessary to produce a voluntary statement. As we said in *Ashe*: "The particular circumstances of each case must be evaluated to determine whether a defendant's drug-related condition made him incapable of acting voluntarily, knowingly, and intelligently." *State v. Ashe*, Me., 425 A.2d 191, 194 (1981); *see also, State v. Gordon*, Me., 387 A.2d 611 (1978). Going beyond implication and allusion, other jurisdictions have explicitly considered the impact of the physical and mental condition of the defendant and the circumstances usually attending incarceration, both in the presence and absence of police interrogation. Such factors have been found determinative in deciding whether a statement was the product of free will and rational intellect. *See, e.g., Pea v. United*

States, 397 F.2d 627 (D.C.Cir.1967); *Commonwealth v. Ritter*, 462 Pa. 202, 340 A.2d 433 (1975); *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974).

Such a result would appear to be consistent with, if not required by, the classic definitions of voluntariness set forth in United States Supreme Court decisions. For example, in *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), Justice Frankfurter, while not focusing upon the issue here presented, stated:

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. The line of distinction is that at which governing self-direction is lost and compulsion, *of whatever nature or however infused*, propels or helps to propel the confession.

*Id.* at 602, 81 S.Ct. at 1879 (emphasis added).

Expressly adopting these values, first articulated in Maine in *State v. Collins*, *supra*, we now hold that in order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect. While a claim of compulsion will frequently be predicated upon police elicitation or conduct, that element is not a *sine qua non* for exclusion under the exclusionary rule inherent in the guarantee against self-incrimination.[4] While proof that a defendant's statement is spontaneous and unsolicited will often result in a finding of voluntariness, such proof does not compel a

**4.** *State v. Price*, Me., 406 A.2d 883 (1979), involves facts similar to the present case but was argued and decided upon a totally distinct legal concept. The challenge in that case was that the defendant's statements were untrustworthy as a result of his emotional condition. Such considerations affect weight rather than admissibility unless the statement is deemed so untrustworthy that its relevance is outweighed by prejudice.

finding that the defendant was free from "compulsion of whatever nature."

The Superior Court justice considered the totality of the circumstances presented in this case and appropriately required the State to establish the voluntariness of defendant's statements beyond a reasonable doubt. The evidence showed that the defendant was incarcerated, that he was vomiting, crying, frightened, emotionally upset, and that he had no conscious intent to discuss the case. These facts rationally permit the fact-finder to remain unpersuaded beyond a reasonable doubt that defendant's statements were voluntary. The trial court's determination will not be disturbed on appeal if there is evidence providing rational support for its conclusion. *State v. Theriault*, Me., 425 A.2d 986 (1981); *see also, State v. Bleyl*, 435 A.2d at 1361.

The entry is:

The Superior Court order suppressing defendant's statements made on April 14, 1981 is affirmed.

All concurring.