# STATE of Maine

v.

# Thomas Ansie FINSON.

Supreme Judicial Court of Maine.

Argued May 12, 1982.

Decided July 13, 1982.

---

1. *See* Annot. 20 A.L.R.Fed. 13 (1974); Lummus, *"The Law of the Case" in Massachusetts,* 9 Boston U.L.Rev. 225 (1929).

David M. Cox, Dist. Atty., Claire A. Julian, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Paine & Lynch, Martha J. Harris (orally), John D. Bunker, Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS CARTER, ROBERTS and VIOLETTE, JJ.

ROBERTS, Justice.

Following a trial before a jury in the Superior Court, Penobscot County, Thomas Finson was convicted of gross sexual misconduct, 17–A M.R.S.A. § 253, and unlawful sexual contact, 17–A M.R.S.A. § 255.[1] On appeal, the defendant raises three issues that merit our discussion: (1) whether the trial court improperly limited the cross-examination of the prosecutrix and her father; (2) whether Finson's statements to the police should have been excluded at trial; and (3) whether an inaccurate jury instruction amounted to obvious error. Since we find no error that justifies reversal of the conviction, we affirm the judgment.

On January 3, 1981, the prosecutrix, her parents and her two sisters went to visit the defendant, his wife and children at the defendant's apartment in Brewer. The two wives were sisters. The prosecutrix was ten years old at the time.

At trial the prosecutrix testified that she and the defendant went to the cellar of the apartment house for the purported purpose of checking the thermostat. As they were about to go back upstairs, Finson pulled the prosecutrix back into the basement and then committed the acts of sexual misconduct complained of at trial. Finson denied that any of the sexual events described at trial occurred but acknowledged that he and the prosecutrix went to the basement to check the thermostat.

I. *Limitation of Cross-Examination*

During the course of trial, the defendant sought to elicit, on cross-examination, testimony from both the prosecutrix and her father with respect to the feelings or hostility of the family towards the defendant. The apparent purpose of this line of questioning was to suggest that the prosecutrix's tale of sexual misconduct was fabricated and that the compelling force behind this fabrication was the dislike of the prosecutrix and her parents for the defendant. With respect to both witnesses, the trial court cut short the questioning after objection by the State. Defendant argues on appeal that the court's foreclosure of cross-examination in this area was error.

Generally, evidence of hostility and bias is admissible and may be shown through cross-examination and independent evidence. *State v. Bennett*, Me., 416 A.2d 720, 724 (1980); *State v. Doughty*, Me., 399 A.2d 1319, 1323–25 (1979); *see generally McCormick On Evidence* § 40 (1972). Testimony relating to the circumstances under-

---

1. 17–A M.R.S.A. § 253 provides in pertinent part:

   A person is guilty of gross sexual misconduct
   1. If he engages in a sexual act with another person, not his spouse, and
   A. The other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E; or
   B. The other person has not in fact attained his 14th birthday . . . .
   17–A M.R.S.A. § 255 provides in pertinent part:
   1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and
   . . . .
   C. The other person has not in fact attained his 14th birthday and the actor is at least 3 years older . . . .

   Sexual act and sexual contact are defined in 17–A M.R.S.A. § 251 as follows:
   "Sexual act" means any act of sexual gratification between 2 persons involving direct physical contact between the sex organs of one and the mouth or anus of the other or direct physical contact between the sex organs of one and the sex organs of the other, or direct physical contact between the sex organs of one and an instrument or device manipulated by the other. A sexual act may be proved without allegation or proof of penetration.
   "Sexual contact" means any touching of the genitals, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire.

lying the hostility or bias may be necessary in order to exhibit the extent of the ill-feelings. *Wigmore On Evidence* § 951 (Chadbourn rev. 1970); *see State v. Salamone,* 131 Me. 101, 104, 159 A. 566, 567 (1932). The scope of the examination is left to the trial court's discretion, although the entire exclusion of testimony may not be a sound exercise of discretion. *State v. Kotsimpulos,* Me., 411 A.2d 79, 81 (1980) (noting M.R. Evid. 402 and 403); *State v. Salamone, supra.* Some relevance to the proceedings must be demonstrated before evidence of a specific person's bias is admissible. A showing or representation that the person whose adverse disposition is at issue is a witness or a party, or had some connection with the crime charged or the prosecution of the defendant may satisfy this requirement. *See State v. Kotsimpulos,* 411 A.2d at 81; *State v. Berube,* 139 Me. 11, 15, 26 A.2d 654, 656 (1942); 81 Am.Jur.2d *Witnesses* § 561 (1976).

▪ In the case at bar, the defendant asserts that the trial court improperly cut off the questioning of the prosecutrix relating to whether the parents of the prosecutrix talked about their dislike of the defendant. The court halted questioning on this area following the State's objection after the child had replied "I'm not sure" once, and "no" twice to the questions of the defendant. In view of the child's apparent lack of knowledge in this area, we conclude that the Superior Court did not abuse its discretion in limiting repetitious cross-examination. *See* M.R.Evid. 403, 611; *see also State v. Hilton,* Me., 431 A.2d 1296, 1299 (1981); *State v. Flemming,* Me., 409 A.2d 220, 224 (1979).

The defendant also contends that the court erred in limiting his cross-examination of the father of the prosecutrix. On cross-examination, the father admitted the existence of some friction between himself and the defendant. The State then objected to a question regarding the father's impressions of his wife's feelings towards the defendant. Sidebar and in-chambers conferences followed.

At these conferences, the factual basis for the questions, the relevance of the wife's attitude and the opportunity for the parents to suggest a fabricated story to the prosecutrix were discussed. The court apparently first thought that defense counsel sought to question the father with respect to the mother's attitude and specific threats made by her. Defense counsel subsequently clarified that the proposed line of questioning was not as broad as the court imagined. The court then approved defense counsel's suggested questions. The following colloquy is illustrative:

[DEFENSE COUNSEL]: The last question I was going—what I was asking, I believe, as I recall, was, did—well, I guess I said, did you get an idea of what her attitude toward Tommy Finson was; and he said yes.

And the next question I asked was—what was it—now, the next question after that will be, assuming that I get the answer that I assume that I'm gonna get, based on—based on the information I have, which is, she didn't like him at all, okay, did that affect your opinion of him. Okay, and then we're gonna get back to him, okay.

I'm not going into—into great gory detail. I am, however, going to ask if they ever discussed him in front of the children. That I will, that I plan to do.

THE COURT: That's all right.

[DEFENSE COUNSEL]: Okay, but other than—than those 2 questions that I just mentioned to you about her—about her attitude, that's as far as I'm gonna go about her.

THE COURT: Why didn't you say that in the first place?

Defense counsel also sought a ruling on potential testimony of the father regarding animosity between the father and the defendant that arose as a result of the father's taking of photographs of women in the nude including the defendant's wife. The court first ruled against the defendant but then implied preliminary approval to the defendant's line of inquiry after its parameters were made clearer by presenta-

tion to the court of the specific questions sought to be asked.

■ Upon resumption of the cross-examination of the father, at the next day of trial, the defendant did not pursue with the father of the prosecutrix the line of questioning relating to either the father's wife or the photographs. Our painstaking review of the colloquy between the court and counsel leads us to the conclusion that the defendant was not foreclosed from any expressly desired line of cross-examination. It is the duty of counsel to insure that a ruling on the exclusion or admission of evidence is clearly preserved on the record. *See Hotchkiss v. Bon Air Coal and Iron Co.*, 108 Me. 34, 62–63, 78 A. 1108, 1120 (1911) (admissibility of evidence reserved for further consideration); J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[04] at 103–36 (1980). This obligation may require counsel to discern the fine line between the proper testing of the limits of a court's ruling and the improper repetition of questions about a subject matter already excluded. We note therefore that the trial judge should aid in the illumination of this line by focusing on and limiting the scope of issues arising from an objection to a single question of a witness, by expressly addressing the question raised by counsel, and by respecting the right of counsel to present objections, request rulings and preserve the record. *See* ABA Standards, *The Function of the Trial Judge* § 5.7 (1972). In the instant matter, we conclude that the Superior Court did not improperly limit the scope of cross-examination. The defendant's failure to continue in this area on cross-examination cannot provide a basis for error on appeal. *See State v. Ledger*, Me., 444 A.2d 404, 417 (1982).

## II. *Finson's Statements To the Police*

■ The defendant raises two issues concerning the statements he made to the police on the day of his arrest. First, Finson asserts that the statements he made to the police should not have been admitted into evidence because at the time they were made he was heavily intoxicated. A person

under the influence of alcohol is not necessarily incapable of waiving his constitutional rights or giving a voluntary statement, if despite the degree of intoxication he is aware and capable of comprehending and communicating with coherence and rationality. *See State v. Kelly*, Me., 376 A.2d 840, 849 (1977); *State v. Hazelton*, Me., 330 A.2d 919, 924 (1974); *see also State v. Caouette*, Me., 446 A.2d 1120 (1982); *State v. Ashe*, Me., 425 A.2d 191 (1981). Testimony directed towards this issue indicated that when Finson was taken to the police station he needed no assistance walking or getting out of the car, although he smelt of liquor, had bloodshot eyes and had an untidy appearance. The officer who interrogated Finson indicated that Finson gave meaningful responses to the questions asked of him. Finson testified, however, that he had been drinking all day and that he felt "pretty sick" when he was picked up by the police. The record provides rational support for the trial court's finding that Finson's intoxication did not preclude the admission of his statements. Accordingly, we must uphold this conclusion on appeal. *See State v. Bleyl*, Me., 435 A.2d 1349, 1358 (1981).

■ Finson also contends that the trial court erred in admitting testimony relating to what he considered a highly prejudicial portion of his statement to the police. In pertinent part, Officer Page testified as follows with respect to Finson's statement to him:

Q Did you ask him if he pulled her pants down?

A Yes.

Q How did he respond to that?

A He said he did not.

Q Did you ask him if he might know who had assaulted her?

A Yes, I did.

Q And how did he respond to that?

A He said he—he didn't—that if she had been 16 or 17 years old and wanted to get it on, maybe.

The defendant sought to exclude the last quoted response under M.R.Evid. 403 on the ground that its prejudice outweighed its

probative value. The State suggested that the statement be admitted for "whatever evidentiary weight the jury wants to give it." The court denied Finson's motion.

We agree with the defendant that the court erred in admitting the statement at issue. As evidenced by the prosecutor's remark, the statement's probative value is slight if not non-existent. Under these circumstances, the trial court must carefully weigh the danger of prejudice to the defendant before admitting evidence over an objection raised pursuant to M.R.Evid. 403. We have noted on a number of occasions the prejudicial nature of evidence of sexual misconduct. *See, e.g., State v. Terrio*, Me., 442 A.2d 537, 541–42 (1982); *State v. O'Neal*, Me., 432 A.2d 1278, 1282 (1981); *State v. Goodrich*, Me., 432 A.2d 413, 418–19 (1981). Although the defendant's statement in this case does not relate to an actual event, it may suggest to the jury that the defendant is of bad character. *See State v. Terrio*, 442 A.2d at 542. This potential for unfair prejudice when weighed against the negligible probative value of the statement at issue leads us to conclude that the statement should have been excluded.

Nevertheless, we believe the error to be harmless. The statement is to a large extent exculpatory. It was a one line statement made during a two-day trial in the course of relating the entire statement, exculpatory in nature, that Finson made to the police. Moreover, the record does not suggest and the defendant does not advance that the State emphasized or exploited this testimony later in trial or during summation. Given the circumstances of this case, we consider it highly unlikely that the error influenced the jury's verdict.

### III. *Jury Instructions*

The defendant contends that the jury may have been misled into finding that conduct amounting to unlawful sexual contact, 17–A M.R.S.A. § 255, was sufficient to support a conviction for gross sexual misconduct, 17–A M.R.S.A. § 253. He bases that argument upon a single sentence, not objected to at trial, wherein the presiding justice used the words "sexual act" in the course of explaining the statutory definition of "sexual contact." Although the State and defendant believed that the justice inadvertently substituted the technical terms of the statutory definition, we disagree. We believe the word "act" was used in the more ordinary sense of "action" or "conduct." While the term may have been an unfortunate choice of words, we do not think that, in this context, the jury was misled to the defendant's prejudice.

Earlier in his charge the presiding justice had defined the elements of gross sexual misconduct involved in Count I of the indictment. That part of the charge included an explanation of the statutory term "sexual act" as defined in 17–A M.R.S.A. § 251. The defendant does not claim, as indeed he could not, that there was any error in the instructions on Count I. While discussing Count II and the elements of unlawful sexual contact, the presiding justice read the definition of the statutory term "sexual contact." He then said, "So, the sexual act then is any touching of the genitals, either directly or through clothing is prohibited and *identified* by the law as sexual contact." (Emphasis added.) The sentence is properly understood as describing that conduct which is prohibited under section 255, charged in Count II, and identified by the statutory term "sexual contact." Thus, we perceive no prejudice to the defendant and no likelihood that the jury could have been misled by the one sentence singled out of the entire charge.

The defendant also raises issues concerning the competence of a child witness, limitation of argument to the jury, and the sufficiency of the evidence. Our review of the record convinces us that no reversible error was committed in these areas.

The entry is:

Judgment affirmed.

All concurring.