STATE of Maine

v.

**Mark F. CLARK.**

Supreme Judicial Court of Maine.

Argued March 8, 1984.

Decided April 17, 1984.

Gene Libby, Dist. Atty., Michael E. Saucier, Asst. Dist. Atty. (orally), Alfred, for plaintiff.

Eric B. Cote (orally), Saco, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Defendant Mark Clark appeals a judgment of conviction after a jury trial in Superior Court, York County, for two counts of burglary, Class C, 17-A M.R.S.A. § 401 (1983), and three counts of theft, Class E, 17-A M.R.S.A. § 353 (1983). He contends that the Superior Court erred in finding that his confessions were voluntary and in excluding the testimony of a defense witness. Finding no reversible error, we affirm the judgment.

## I.

On October 5, 1982, a York County grand jury returned two indictments against the defendant, Mark Clark. The first contained three counts, charging the defendant with burglary of a bowling alley in Biddeford, theft of a set of keys from the bowling alley, and theft of a jacket and assorted tools from a nearby construction yard, all occurring on May 31, 1982. The second indictment contained two counts, charging Clark with burglary of a gas station in Arundel and theft of beer and cigarettes, also occurring on May 31, 1982. The defendant subsequently filed a motion to suppress his oral and written statements made to police on June 1, 1982, following his arrest.

Based on the evidence presented at the hearing on that motion, the presiding justice would have been justified in finding the following facts. Shortly after midnight on June 1, 1982, the Biddeford Police Department received a report of a burglary at a local bowling alley. Corporal James Sweetman responded to the call and observed the defendant hitchhiking on a road near the bowling alley. The defendant agreed to accompany Sweetman to police headquarters where he was given the *Miranda* warnings, but denied any involvement in the burglary. Corporal Sweetman could tell that the defendant had been drinking by "the smell emitting from his mouth," but observed that he "was acting in a normal fashion." The defendant was released at the town line between Biddeford and Arundel at 2:00 a.m.

Later that morning, at approximately 11:00 a.m., the Biddeford police received a call that there was a man urinating near some parked cars at the Exit 4 entrance to the Maine Turnpike. Officer Nathaniel Roberts and Captain Norman Gaudette were dispatched to the scene. They found the defendant standing beside a vehicle thumbing a ride. The defendant agreed to accompany the officers to the station. En route he was read the *Miranda* warnings, and stated that he understood his rights and was willing to talk without an attorney. The defendant appeared to have been drinking but was not drunk. His face was flushed, but he talked and walked normally and appeared to understand what was being said to him. Although the defendant "appeared tired" and "probably had a few beers into him", he "was coherent."

Upon arrival at the station the defendant was again read the *Miranda* warnings and signed a *Miranda* card. Although Captain Gaudette made no threats or promises, the defendant described the burglary of the bowling alley and the theft from the construction yard. He also volunteered information as to the burglary of the gas station in Arundel, about which the Biddeford police had no information. The defendant spoke in complete sentences and provided details consistent with the police investigation. He was not upset or physically ill and never attempted to discontinue the interrogation. Gaudette prepared a written statement and read it to the defendant, who signed the statement.

Gaudette then informed the sheriff's department of the defendant's confession to the burglary of the gas station. Deputy Joseph Gagne came to police headquarters to interview the defendant. The defendant was again given the *Miranda* warnings and again signed a *Miranda* card. Gagne observed that the defendant appeared to have been without sleep for a long time, and was under the influence of alcohol or drugs. Gagne testified that although the

defendant's speech was slow, he spoke coherently and gave a narrative statement regarding the burglary of the gas station. Gagne prepared a second written statement which was read to and signed by the defendant.

Rejecting the defendant's contention that his statements to the police were involuntary, the motion justice denied the defendant's motion to suppress. At trial Gaudette and Gagne testified as to the defendant's inculpatory statements.

We have recently said:

A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair.

*State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983); *see State v. Caouette*, 446 A.2d 1120, 1123 (Me.1982) ("in order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect"). The State must establish voluntariness beyond a reasonable doubt. *State v. Collins*, 297 A.2d 620, 627 (Me.1972). The motion justice's ruling that the State has carried its burden of establishing voluntariness beyond a reasonable doubt will not be disturbed on appeal if there is evidence providing rational support for that conclusion. *State v. Caouette*, 446 A.2d at 1124.

In denying the defendant's motion to suppress, the motion justice found beyond a reasonable doubt that although the defendant was "noticeably under the influence of something", that condition "did not impair his ability to understand ... what he was doing" and "his statements were voluntary [and given] knowingly and ... intelligently." The defendant contends the motion justice's finding that he was "noticeably under the influence of something" precluded a finding that his confessions were voluntary and there was insufficient evidence on the record as a whole to support a finding of voluntariness.

We have repeatedly rejected the notion that consumption, or being under the influence, of alcohol renders a confession *per se* involuntary. *See State v. Rusher*, 468 A.2d 1008, 1011–12 (Me.1983); *State v. Franklin*, 463 A.2d 749, 752 (Me.1983); *State v. Ashe*, 425 A.2d 191, 194 (Me.1981); *State v. Gordon*, 387 A.2d 611, 612 (Me. 1978).

■ As we stated in *State v. Finson*, 447 A.2d 788 (Me.1982):

A person under the influence of alcohol is not necessarily incapable of waiving his constitutional rights or giving a voluntary statement, if despite the degree of intoxication he is aware and capable of comprehending and communicating with coherence and rationality.

*Id.* at 792.

■ Here, the motion justice found that although the defendant was under the influence his confessions were voluntary and given knowingly and intelligently. The record provides rational support for that conclusion. The evidence showed that at the time the defendant was picked up by the police at the Maine Turnpike exit he could walk normally without assistance from the officers. *See State v. Finson*, 447 A.2d at 792 (fact that defendant could walk without assistance supports court's finding of voluntariness). He was given the *Miranda* warnings several times and signed a *Miranda* card twice. Both of the interrogating officers testified that although the defendant spoke slowly during the interrogation, he could respond to questions in narrative answers comprised of coherent and complete sentences. *See State v. Ashe*, 425 A.2d at 194 (fact that defendant could respond to questions coherently in narrative form supports court's finding of voluntariness). According to the officers, the defendant was not crying, upset, or physically ill, and he never requested cessation of the interrogations. We are particularly impressed by the defendant's ability to recall details of the burglaries and thefts. For example, the defendant

was able to recall the exact spot along the highway where he had left the set of keys stolen from the bowling alley. While the substantial evidence of the defendant's exhaustion and degree of intoxication may have provided rational support for the opposite conclusion, the record provides rational support for the motion justice's finding that the defendant's statements were voluntary.

## II.

The defendant also contends that the trial justice committed reversible error in excluding the testimony of defense witness Brian Dione. At the suppression hearing, Dione testified that at approximately 10:00 a.m. on June 1, 1983, he received a telephone call from the defendant. Dione testified:

> Mark was stating that he was drunk and he was about ready to pass out .... He was drunk.... He was slurring his words, mumbling ....

At trial, when defense counsel asked Dione about the contents of the phone call, the presiding justice sustained the State's objection, ruling that the proffered testimony was inadmissible as hearsay.

■ The record contains no indication that the defendant made an offer of proof pursuant to M.R.Evid. 103(a)(2) to preserve the presiding justice's alleged error in excluding Dione's testimony.[1] *See State v. Rich*, 395 A.2d 1123, 1130 (Me.1978), *cert. denied*, 444 U.S. 854, 100 S.Ct. 110, 62 L.Ed.2d 71 (1979). This failure cannot be cured by "[b]ald factual assertions" in the defendant's brief, *see Madore v. Bangor Roof & Sheet Metal Co.*, 428 A.2d 1184,

1188 (Me.1981), nor can it be cured by reference to testimony at the suppression hearing that was not before the trial justice when he made his ruling.[2] *Cf. State v. Stone*, 397 A.2d 989, 998 (Me.1979) (defendant may not use evidence introduced at trial to challenge ruling of justice presiding over motion to suppress). Because the defendant failed to preserve the claimed error by providing an offer of proof, this court will reverse the exclusion of the evidence only for obvious error.[3] M.R.Evid. 103(d); M.R.Crim.P. 52(b).

■ On appeal, the defendant contends that had Dione testified at trial as he did at the suppression hearing his testimony would have been admissible under the exception to the hearsay rule for declarations of existing mental, emotional, or physical condition. *See* M.R.Evid. 803(3). Assuming this contention is correct, we do not find the exclusion of Dione's testimony was "obvious error affecting substantial rights" of the defendant. The obvious value of Dione's testimony was to discredit the defendant's confessions. Because the defendant's motion to suppress had been denied and the confessions had been admitted, Dione's testimony could only affect the weight to be given the defendant's statements. M.R.Evid. 104(e). There was, however, a considerable amount of testimony, in addition to that which the defendant sought to elicit from Dione, indicating that the defendant suffered from an impaired condition at the time he confessed. Such testimony included the defendant's own statements as to his fatigue and intoxication and the statements of police officers

---

1. The defendant claims that an offer was made during a conference held in chambers that, for some reason, was not made a part of the transcript filed with this court. It is the obligation of the appellant to provide an adequate record for appeal. *State v. Meyer*, 423 A.2d 955, 956 (Me.1980); *State v. MacArthur*, 417 A.2d 976, 979 (Me.1980). Defendant made no effort to have the asserted omission corrected by filing a motion with the Superior Court pursuant to M.R.Crim.P. 39(h).

2. The purpose of the requirement of an offer of proof is not only to apprise the appellate court of "the scope and effect of the ruling" but also to "persuade the trial judge to change his mind and admit the evidence." R. Field & P. Murray, *Maine Evidence* § 103.4, at 9 (1976).

3. The defendant also failed, despite the presiding justice's request, to offer any theory under which the testimony might be admissible. *See State v. Wells*, 423 A.2d 221, 226 (Me.1980); *State v. Howard*, 405 A.2d 206, 210 (Me.1979).

that he appeared "tired, like he'd been up a while and had a rough night," was "spaced out," and "had been drinking." Dione's testimony being merely cumulative in effect, its exclusion did not constitute "a seriously prejudicial error tending to produce manifest injustice." *State v. True,* 438 A.2d 460, 467 (Me.1981) (quoting *State v. Baker,* 409 A.2d 216, 219 (Me.1979)); *see State v. Howard,* 405 A.2d at 210; *cf. State v. Collins,* 456 A.2d 362, 364 (Me.1983) (wrongful exclusion of evidence *harmless* error where evidence is merely cumulative).

The entry is:

Judgment affirmed.

All concurring.