STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE

v.

DENNY D. JOHNSON,

        Defendant

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-02-361
DHM-KEN - 11/14/2003

ORDER ON MOTION
TO SUPPRESS

DONALD L. GARBRECHT
LAW LIBRARY

DEC 12 2003

This matter is before the court on defendant's motion to suppress statements made by the defendant immediately and shortly after a motor vehicle collision resulting in the death of an other, for which defendant is now charged as criminally responsible.

On July 17, 2002, at approximately 11:30 p.m., two residents of Randolph heard the sound of an automobile being driven at a very high rate of speed toward Pittston/Chelsea. A few minutes later, they heard an automobile making the same sound traveling in the opposite direction. Shortly thereafter, both the residents heard a loud crash preceded by a squeal and succeeded by a car horn "going off." Both residents called 9-1-1. The first person on the scene was a paramedic/firefighter of the Gardiner Fire Department operating Rescue Unit #1. He found the defendant laying on the ground and a motor vehicle up against a tree with a deceased person "hanging out of it." He approached the defendant and noticed a large laceration on his back as the defendant laid crouching in a crawling position. The defendant was very agitated and immediately stated to the paramedic that he wanted "to go home." The paramedic advised the defendant that he was a paramedic and that defendant needed to lay down and stay calm. At this point, the defendant calmed down, laid on his back and followed the paramedic's commands. The paramedic then assisted in placing the defendant in a backboard and restraining collar and seeing that defendant was placed in the

ambulance. During this time, the paramedic was looking for other injuries and, in order to assist him in the evaluation of potential injuries as well as to assess the mental state of the defendant, asked a series of questions. In response to being asked as to whether he was driving, the defendant gave an affirmative response. The paramedic asked the defendant his name and he answered, "Denny." The defendant asked the paramedic whether he would live and the paramedic answered that he did not know but that his injuries were very severe.

The paramedic then testified as to the protocol for assistance of a seriously injured person as the ABCD analysis, wherein his first responsibility was to examine the airway, then the breathing, the circulation and finally any deficits in the physical condition of the patient. The deficient portion of the analysis includes a mental status assessment. This is a determination by the paramedic of the mental acuity of a trauma patient. It assists the paramedic in determining the nature of the injuries of the patient including any closed head injuries, an analysis of the accuracy of the patient in alerting the paramedic to pain and then assistance to the rescue personnel in finding and giving emergency treatments to injuries which may, or may not, be apparent.

There are four parts to the assessment including the ability of the patients to give their name, to describe their location, to be aware of the time and to describe any events leading to the injuries. In the present situation, upon being asked by the paramedic whether his name was Dennis Johnson or Denny, the defendant answered "Denny." Upon being asked his location, the defendant responded that he was in Randolph and he gave a time generally consistent with the actual time. When asked to describe the events, the defendant was aware that he had been in an automobile accident and when asked in conjunction with these events who was driving responded, "I was." In furtherance of the assessment and to assist in diagnosis and treatment the defendant

was asked whether he had been drinking. This was specifically asked by the paramedic because he smelled the odor of an alcoholic beverage. The defendant responded he had consumed two drinks. Further, with regards to the events of the evening, the defendant advised the paramedic that he had been "coming from a party in Farmingdale." When asked how fast he was driving, the defendant responded, 50 m.p.h. The defendant also indicated that his chest was hurting.

The paramedic determined that the defendant needed to go to the trauma center at the Lewiston hospital. During the trip toward the hospital, the paramedic became aware of a possibility of a "tension pneumothorax." This is a presence of air in the space in the chest cavity outside of the lungs which, if left untreated, can cause the lungs to put pressure on the heart. The paramedic determined that a chest decompression was necessary to prevent that serious condition. The ambulance was stopped and the paramedic inserted a large needle into the chest cavity of the defendant in order to conduct a "chest decompression." As he was doing so and talking with the defendant, Mr. Johnson said, "You're stabbing me in the heart." The paramedic testified this sensation was consistent with the actual procedure being performed.

As they were traveling in the ambulance toward the Lewiston hospital, the paramedic, having been joined by another rescue person, continued to attempt to communicate with the defendant in order to be aware of his mental condition, most notably to determine whether the patient was to change his level of consciousness, and in addition, to determine any developments with respect to the patient's condition by new or aggravated pain. Included in the conversation was further discussion with respect to the driver of the automobile. On each occasion, the defendant answered that he had been the driver. Upon arrival at the emergency room in Lewiston, the doctor on duty, in making an assessment of injuries, asked the defendant "who was driving?"

The defendant answered "I was." The paramedic overheard this conversation as he was reporting the situation to the nurse. This question is necessary for medical personnel in order to determine the likelihood of certain injuries affected by the location of the patient in the automobile, i.e., relationship to steering wheel, dashboard, windshield, etc.

Upon cross-examination, the paramedic agreed that defendant was agitated and upset and at one point began crying. He was quoted as saying, "I want this to end; I want to go home; just want to forget this." The paramedic testified that intravenous catheters were presented the defendant on two occasions, first at the scene and second during the ambulance run. In both cases, he was simply given normal saline, .9% solution. The paramedic also reiterated the necessity of continued communication with the patient in order to keep them alert.

Also testifying was a trooper with the Maine State Police who arrived at the scene immediately following the rescue vehicle. He, too, observed the car in collision with the tree and a dead passenger. He observed the defendant lying on the ground. As the defendant was being tended by the rescue personnel, the trooper testified he asked him his name and the defendant responded "Denny." The trooper also asked who was the driver and quoted the defendant as saying, "I was but no more."

Two other rescue personnel were presented as witnesses, a Gardiner fire department firefighter and a Gardiner fire department firefighter/paramedic. Both observed the mental assessment process. The paramedic was present during the chest decompression and heard the statement of the defendant that he felt like he was being stabbed in the heart. He also heard statements by the defendant that he had been coming from a party in Farmingdale, had two drinks and was driving.

On behalf of the defendant, a high school classmate testified that on July 17, in the evening hours, she spent two and a half hours at Marguerita's, a restaurant in Augusta. She indicated she left about 10:30 p.m. She testified that the defendant visited with her at the restaurant commencing at approximately 8:00 p.m. and that he left a few minutes before 10:30 p.m.

Both parties cite to *State v. Collins*, 297 A.2d 620 (Me. 1972) and *State v. Caouette*, 446 A.2d 1120 (Me. 1982) as the present state of the law in the State of Maine with respect to admissibility of statements of self-incrimination. It is clear that the State must prove beyond reasonable doubt that the statements, in order to be admissible, be "the result of defendant's exercise of his own free will and rational intellect."

> While proof that the defendant's statement is spontaneous and unsolicited will often result in a finding of voluntariness, such proof does not compel a finding that the defendant was free from 'compulsion of whatever nature'.

*State v. Caouette*, 446 at 1123-24.

There is no evidence that the defendant had attended a party in Farmingdale and it is clear that the collision took place as the vehicle was traveling in a direction toward rather than away from Farmingdale. The evidence is also clear that the defendant suffered severe, life-threatening injuries at the time statements were made. It is undisputed that the defendant was agitated, distraught, and wanted to go home. The question is whether statements were made under circumstances that showed the existence of some compulsion interfering with his ability to exercise his own free will and rational intellect.

There is no evidence that the defendant suffered from any mental impairment or that he displayed such ravages of pain as to be incapable of expressing a rational thought. The paramedics made it clear to the defendant that he was seriously injured

and needed to go to the hospital. They described no head injury or manifestations by words or conduct of the defendant to indicate the symptoms of an unseen head injury. While there is no confirmation of a party in Farmingdale, it is assumed that his statement with regard to such a party is inconsistent with the time and the circumstance. In other respects, the defendant's statements were consistent with the and responsive to the questions asked. The questions by the officer were consistent with preliminary inquiries to determine the identity of persons involved and their status vis-à-vis the accident and the questions by the paramedical personnel were consistent with sound and well established emergency treatment purposes. There is no evidence the defendant ever lost consciousness. Indeed, it could be surmised that once being told he had serious injuries and needed to go to the hospital, in the presence of a paramedic, he acceded to their medical training and mission and presumed that their activities, including questions as to operation of the vehicle, were appropriate to the treatment in order to save his life. Assuming that perception, and consistent with the real purpose of the questions, defendant's motivation to respond truthfully would be the result of a rational purpose in saving his own life rather than some external compulsion rendering his statements involuntary. Further, once being advised of the seriousness of his injuries and facing an uncertain future, a reasonable person would expect a strong motivation to let the truth be known contrary to inappropriate compulsion. While the party's statement may be questionable, his response to the speed of the vehicle and his appropriate expression of the nature of the experience of having a large needle thrust into his chest cavity certainly are indicative of a person oriented as to his situation and well aware of the circumstances.

The court agrees with the defendant as it must take into account the totality of the circumstances in this situation. Defendant argues that the fact that he could not

subsequently remember anything about the accident at a later time supports a reasonable doubt about the voluntariness. The court understands that a failure of memory, like a "blackout," is a function of memory and not mental orientation at the time of the experience. The inability to remember does not necessarily have a direct relationship to a level of consciousness at the time of the event.

The court is satisfied that the State has proven beyond a reasonable doubt that the statements made by the defendant as described were voluntary, were the result of defendant's exercise of his own free will and rational intellect and free from compulsion of whatever nature.

For all the reasons indicated, the entry will be:

Defendant's motion to suppress is DENIED.

Dated: November____14___, 2003

Donald H. Marden
Justice, Superior Court

STATE OF MAINE
  vs
DENNY D JOHNSON
95 WINDSOR STREET
RANDOLPH ME 04346

DOB: 11/12/1975
Attorney: WALTER MCKEE
         LIPMAN & KATZ PA
         227 WATER STREET
         PO BOX 1051
         AUGUSTA ME 04332-1051
         RETAINED 10/18/2002

Filing Document: INDICTMENT
Filing Date: 10/18/2002

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2002-00361

**DOCKET RECORD**

State's Attorney: DAVID CROOK

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1  **MANSLAUGHTER**                              07/17/2002 RANDOLPH
   17-A  203(1)(A)           **Class A**

## Docket Events:

10/21/2002 FILING DOCUMENT -  INDICTMENT FILED ON 10/18/2002

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 10/18/2002

10/21/2002 TRANSFER -  BAIL AND PLEADING GRANTED ON 10/18/2002

10/23/2002 Charge(s):  1
           HEARING -  ARRAIGNMENT SCHEDULED FOR 10/24/2002 @ 8:30

10/24/2002 Charge(s):  1
           HEARING -  ARRAIGNMENT HELD ON 10/24/2002
           S KIRK STUDSTRUP , JUSTICE
           Attorney:  WALTER MCKEE
           DA:  PAUL RUCHA
           Defendant Present in Court

           READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
           DEFENDANT.  21 DAYS TO FILE MOTIONS
10/24/2002 Charge(s):  1
           PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 10/24/2002
           S KIRK STUDSTRUP , JUSTICE
           Attorney:  WALTER MCKEE
           DA:  PAUL RUCHA
           Defendant Present in Court
10/24/2002 BAIL BOND -  SURETY BAIL BOND SET BY COURT ON 10/24/2002
           S KIRK STUDSTRUP , JUSTICE
           Defendant Present in Court

           $18,000 SURETY; NO USE/POSSESSION ALCOHOL/DRUGS; RANDOM SEACH AND TESTING; NOT OPERATE A
           MOTOR VEHICLE; NO CONTACT WITH KAREN WOLFANGER AND THE FAMILY OF NICHOLAS GRANT.

10/24/2002 BAIL BOND - $18,000.00 SURETY BAIL BOND FILED ON 10/24/2002

Bail Amt: $18,000          Surety Type: DWELLING AND LAND          Surety Value: $73,000
County: KENNEBEC           County Book ID: 7113 Book Page: 201
Date Bailed: 10/24/2002    Prvdr Name: RONALD C JOHNSON JR
Lien Issued: 10/24/2002    Rtrn Name: RONALD C JOHNSON JR
Lien Discharged:

## Conditions of Bail:

Refrain from possession or use of intoxicating liquor. Refrain from possession or use of any unlawful drugs.

Submit to random search and testing for alcohol, drugs upon reasonable suspicion of use or possession.

Not operate or attempt to operate any motor vehicle until licensed.

Have no contact with...

1   KAREN   WOLFANGER
2   NICHOLAS   GRANT   THE FAMILY OF NICHOLAS GRANT.

11/04/2002 MOTION -  MOTION FOR DISCOVERY FILED BY DEFENDANT ON 11/04/2002

DEFENSE REQUESTS THAT IF AN EXPERT WITNESS WHOM THE STATE INTENDS TO CALL IN ANY PROCEEDINGS HAS NOT PREPARED A REPORT OF EXAMINATION OR TESTS, THE COURT, UPON MOTION, MAY ORDER THAT THE EXPERT PREPARE AND THE ATTORNEY FOR THE STATE SERVE A REPORT STATING THE SUBJECT MATTER ON WHICH THE EXPERT IS EXPECTED TO TESTIFY, THE SUBSTANCE OF THE FACTS TO WHICH THE EXPERT IS EXPECTED TO TESTIFY AND A SUMMARY OF THE EXPERT'S OPINIONS AND THE GROUNDS FOR EACH OPINION.

11/04/2002 MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 11/04/2002

DEFENSE STATES THAT A PERSON IN CUSTODY HAS A RIGHT NOT TO BE INTERROGATED WITHOUT FIRST BEING GIVEN A FOUR-POINT WARNING OF HIS RIGHTS IN RESPECT TO SUCH INTERROGATION AND OF THE CONSEQUENCES OF RESPONDING TO THE INTERROGATOR'S QUESTIONS.  AS SUCH, EVIDENCE OBTAINED DIRECTLY OR INDIRECTLY FROM AN INTERROGATION CONDUCTED IN VIOLATION OF THE STRICTURES OF MIRANDA, A VIOLATION OF RIGHTS OF CONSTITUTIONAL DIMENSION, MUST BE, ON DEMAND, SUPPRESSED.

11/14/2002 ORDER -  SPECIAL ASSIGNMENT ENTERED ON 11/14/2002

JUSTICE DONALD H. MARDEN, ASSIGNED TO HEAR AND DISPOSE OF ALL MATTERS.

12/18/2002 ORDER -  COURT ORDER FILED ON 12/12/2002
DONALD H MARDEN , JUSTICE
AFTER CONFERENCE WITH COUNSEL IT IS HEREBY ORDERED: TRIAL IN THIS MATTER WILL BE CONDUCTED COMMENCING OCTOBER 27, 2003 AT 9:00.  THE CLERK WILL SCHEDULED A TRIAL MANAGEMENT CONFERENCE IN SEPTEMBER 2003.  ALL TRIAL MOTIONS MUST BE FILED WITH THE COURT NO LATER THAN SEPTEMBER 1, 2003.  MOTIONS TO SUPPRESS, MOTIONS FOR DISCOVERY, MOTIONS TO DESIGNATE EXPERTS, AND THE LIKE, SHALL BE FILED NO LATER THAN JANUARY 27, 2003.

08/13/2003 CASE STATUS -  CASE FILE LOCATION ON 08/13/2003

JUSTICE MARDEN REQUESTED THE FILE

08/14/2003 MOTION -  MOTION IN LIMINE FILED BY DEFENDANT ON 08/14/2003

MOTION IN LIMINE CONCERNING BLOOD ALCOHOL TESTS AND ALLEGED ALCOHOL CONSUMPTION BY

DEFENDANT
08/25/2003 CASE STATUS - CASE FILE RETURNED ON 08/25/2003

08/25/2003 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 10/06/2003 @ 1:00
          DONALD H MARDEN , JUSTICE
          NOTICE  TO PARTIES/COUNSEL
08/25/2003 HEARING - MOTION FOR DISCOVERY SCHEDULED FOR 10/06/2003 @ 1:00
          DONALD H MARDEN , JUSTICE
          NOTICE  TO PARTIES/COUNSEL
08/25/2003 HEARING - CONFERENCE SCHEDULED FOR 09/19/2003 @ 1:00

          NOTICE TO PARTIES/COUNSEL
08/25/2003 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 08/25/2003

08/25/2003 HEARING - CONFERENCE NOTICE SENT ON 08/25/2003

09/03/2003 HEARING - CONFERENCE CONTINUED ON 09/03/2003

09/03/2003 HEARING - CONFERENCE SCHEDULED FOR 10/06/2003 @ 1:00
          DONALD H MARDEN , JUSTICE
          NOTICE TO PARTIES/COUNSEL
09/03/2003 HEARING - CONFERENCE NOTICE SENT ON 09/03/2003

09/05/2003 TRIAL - DOCKET CALL SCHEDULED FOR 10/06/2003 @ 9:00

10/03/2003 HEARING - CONFERENCE SCHEDULED FOR 10/06/2003 @ 1:00

          NOTICE TO PARTIES/COUNSEL
10/06/2003 TRIAL - DOCKET CALL HELD ON 10/06/2003
          DONALD H MARDEN , JUSTICE
          Attorney: WALTER MCKEE
          DA: PAUL RUCHA          Reporter: KIMBERLY MCCULLOCH
          Defendant Present in Court
10/06/2003 HEARING - CONFERENCE CONTINUED ON 10/06/2003

          DEPUTY D.A. HOME SICK, CONTINUED
10/09/2003 Charge(s): 1
          TRIAL - JURY TRIAL SCHEDULED FOR 10/27/2003 @ 9:00

          NOTICE TO PARTIES/COUNSEL
10/23/2003 Charge(s): 1
          TRIAL - JURY TRIAL CONTINUED ON 10/07/2003

10/23/2003 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 10/30/2003 @ 1:00
          DONALD H MARDEN , JUSTICE
          NOTICE  TO PARTIES/COUNSEL
10/23/2003 HEARING - MOTION TO SUPPRESS NOT HELD ON 10/06/2003

10/31/2003 HEARING - MOTION TO SUPPRESS HELD ON 10/30/2003
          DONALD H MARDEN , JUSTICE
          Attorney: WALTER MCKEE
          DA: ALAN KELLEY          Reporter: LAURIE GOULD
          Defendant Present in Court

STATE WITNESSES: KENNETH PETER ALLEN, TROOPER MARK BARNEY, ROBERT SAUCIER, RICHARD
SEABERG. DEFENSE WITNESSES: PAMELA MARSHALL. 15 DAYS FOR COUNSEL TO FILE MEMORANDUMS,
RECESSED HEARING AT 4:40
11/05/2003 OTHER FILING - MEMORANDUM OF LAW FILED ON 11/05/2003

STATE'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS.
11/05/2003 ORDER - TRANSCRIPT ORDER FILED ON 11/05/2003

MAILED TO LAURIE GOULD
11/10/2003 OTHER FILING - MEMORANDUM OF LAW FILED ON 11/10/2003

FILED BY DEFENSE COUNSEL
11/14/2003 HEARING - CONFERENCE HELD ON 10/06/2003

11/14/2003 MOTION - MOTION TO SUPPRESS DENIED ON 11/14/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
11/14/2003 ORDER - COURT ORDER ENTERED ON 11/14/2003

ORDER ON MOTION TO SUPPRESS.

## Exhibits

10/30/2003 STATE#1, Exhibit#1, COPY OF STATEMENT WRITTEN BY RICHARD SEABERG, Adm w/o obj on
10/30/2003.
10/30/2003 STATE#1, Exhibit#2, COPY OF STATEMENT OF ROBERT SAUCIER, Offered on 10/30/2003.

A TRUE COPY
ATTEST: _____
Clerk