**STATE of Maine**

v.

**Toby E. THURSTON.**

Supreme Judicial Court of Maine.

Nov. 15, 1978.

---

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Constance P. O'Neil (orally), Law Student, for plaintiff.

Lowry, Platt, Fitzhenry, Lunt & Givertz by Stephen C. Lunt (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On January 5, 1978 an indictment returned in the Superior Court (Cumberland County) charged defendant Toby E. Thurston with having committed, on December 27, 1977, the crime of Robbery, Class A, in violation of 17–A M.R.S.A. §§ 651(1)(B), and(E). In February a jury found defendant guilty as charged. Defendant's appeal from the judgment of conviction challenges two rulings made by Justices of the Superior Court which denied defendant the right to have his confession excluded as evidence against him. One of these rulings denied a pre-trial motion of defendant to suppress his confession as potential evidence against him. The other ruling was made by a different Justice who presided at defendant's trial and allowed the issue of the admissibility of defendant's confession to be again considered at trial because of additional circumstances which were being asserted.

We deny the appeal.

On Tuesday, December 27, 1977, the Portland police learned that guns stolen from a local pawnshop had been used in the armed robbery of a taxi driver. Likely suspects were the defendant, several others, and one Larry Cox, on whom there was an outstanding arrest warrant regarding an unrelated charge. The same evening, the police learned that Cox was staying at the local Ramada Inn in a room registered to one Deborah Rand. Later investigation at the Ramada Inn revealed that defendant, and not Deborah Rand, was occupying the room let in her name, along with Cox and the other suspects.

The police thereupon entered the room with guns drawn. Inside, they found the four young suspects in disarray, partially clothed, lying on mattresses that had been strewn around the room. The suspects were ordered against the wall and frisked. Cox, for whom there was an arrest warrant, was immediately arrested and handcuffed. The others, according to testimony given by the police officers, were "asked" to come down to headquarters for questioning and "advised" that if they did not, they "could" be arrested for Criminal Trespass. The police also testified that defendant, who was "escorted" to the cruiser by two officers, accompanied them "voluntarily." Defendant disputed this testimony, contending that he was led out by the arms and submitted to the police because of the indications that he was under arrest.

For slightly more than two hours after 10:00 p. m. of Tuesday, December 27th defendant and the other suspects were individually questioned. During this period defendant was warned more than once of his *Miranda* rights which the Justice hearing the motion to suppress, in a ruling not challenged by defendant, found defendant had knowingly and voluntarily waived. During a brief interview between the police and defendant, at which the police made no effort to obtain a confession, defendant denied complicity in any crime. However, because the other suspects were making statements which implicated defendant, he was formally arrested at 12:30 a. m. of Wednesday, the 28th of December. Thereafter, defendant continued to be in police custody without being presented before a magistrate. At 5:00 p. m. on December 28th, he confessed, after having been again told, and having again waived, his *Miranda* rights and after having been confronted with written statements of his companions

contradicting his own earlier claims of innocence. Defendant was not presented before a magistrate until the morning of Thursday, the 29th of December.

Defendant asserts two grounds of error in the admission of his confession as evidence.

■ He says, first, that his confession should have been excluded because it was given while he was in custody of the police at a time when the police had unnecessarily delayed taking him before a magistrate, in violation of Rule 5(a) M.R.Crim.P.[1]

We sustain the finding of the Justice who ruled on defendant's motion to suppress that in the totality of the circumstances the delay in presenting defendant before a magistrate which had occurred at the time defendant confessed was not "unnecessary" delay.

The critical time of delay to be accounted for as not "unnecessary" is the period of the working hours of Wednesday, December 28th. During this time the police were not engaged in questioning defendant. Instead, they spent the early part of the morning of the 28th interviewing Cox who, as a juvenile, had been detained at another location and whose story was important to assist the police in sorting out the conflicting statements of four suspects concerning two separate crimes. The police then proceeded to place the matter before the Assistant District Attorney for review, an undertaking which involved presenting him with all of the conflicting evidence and the police interpretation of it, followed by the fourfold preparation of sworn, typewritten documents. A significant portion of the delay occurring during the 28th was attributable to difficulties encountered in locating the Assistant District Attorney as well as to the time consumed by the prosecuting officer in reviewing the problems involved.

These facts have important bearing to show that the delay in presenting defendant to a magistrate during the working hours of December 28th was not "unnecessary" delay. Rule 5(a) itself states that when a "person arrested without a warrant", as was the defendant here, is brought before a magistrate, "the *complaint* shall be filed with *that magistrate forthwith.*" (emphasis supplied) Moreover, by virtue of 15 M.R.S.A. § 708, which expresses a legislatively determined public policy favoring the exercise of prosecutorial discretion before a prosecution is undertaken,

> "no complaint shall issue . . . for any . . . Class A, B or C crime unless approved by the district attorney or his designee . . ."

and further

> "the district attorney or his designee shall, whenever practical, prepare all complaints for . . . Class A, B and C crimes . . . ."

In light of this legislative policy and the above-mentioned requirement of Rule 5(a) itself we cannot say that the Superior Court Justice committed clear error in refusing to find "unnecessary" the delay fairly attributable to the police submission of the case to the prosecutor's office for review and preparation of the complaint to be filed. The obvious administrative difficulties, as well as the absence of any police effort to exploit the delay by putting the time to improper exploratory use, require that the Superior Court Justice be upheld in his ruling that defendant's confession, *independently* found by the Justice to be volun-

---

1. Rule 5(a) M.R.Crim.P. states:

"*(a) Appearance Before the Magistrate.* An officer making an arrest under a warrant issued upon complaint shall take the arrested person without unnecessary delay before a magistrate as commanded in the warrant; if the arrest is made at a place 100 miles or more from the place where the warrant was issued, the person arrested, if bailable, shall, if he so demands, be taken before the nearest available magistrate within the division in which he was arrested, or before a bail commissioner, who may admit him to bail for appearance before the proper magistrate. Any person making an arrest without a warrant having been issued shall take the arrested person without unnecessary delay before the nearest available magistrate within the division within which the arrest was made. When a person arrested without a warrant is brought before a magistrate the complaint shall be filed with that magistrate forthwith."

tary,[2] was forthcoming during a period as to which no violation of Rule 5(a) M.R. Crim.P. had occurred.

We stress that our decision upholding the Superior Court Justice's denial of the pretrial motion to suppress is not to be interpreted as a condonation of police delay in presenting an arrested person before a magistrate or as a denigration of the purposes Rule 5(a) M.R.Crim.P. seeks to effectuate. A different Justice, or the Justice who acted here had he been confronted with only slightly different facts, might conclude that there was indeed "unnecessary" delay in presenting defendant to a magistrate, and such a ruling might well be sustained on appeal as not clearly erroneous. It would then be the responsibility of this Court to determine the proper sanction to impose to ensure that the values safeguarded by Rule 5(a) M.R.Crim.P., which are central to our system of criminal justice, will be adequately preserved and fostered.

 Defendant's second claim on appeal is that his confession should have been excluded from evidence as "fruit of the poisonous tree" insofar as defendant gave the confession while he was being held in police custody consequent upon an *unlawful* arrest. The issue thus raised was the additional question believed by the Justice presiding at the trial to have been omitted from consideration in the disposition of defendant's motion to suppress and which, therefore, was permitted further review at the trial.

Ruling against defendant on this "fruit of the poisonous tree" issue, the presiding Justice assigned alternative reasons for his determination: (1) defendant was not arrested at all until 12:30 a. m. on Wednesday, December 28th, and the arrest then made was lawful because there then existed probable cause for an arrest of defendant; or (2) even if what transpired at the hotel room two hours earlier was an arrest in legal contemplation, it too was a lawful arrest insofar as it was an arrest for a crime being committed in the presence of the officers.

We sustain the ruling of the presiding Justice as supported by this latter ground of reasoning.[3]

This Court has consistently resolved issues as to whether an arrest has been effected by resort to the standard set out in *State v. MacKenzie*, 161 Me. 123, 138, 210 A.2d 24, 33 (1965) (quoting *Commonwealth v. Holmes*, 344 Mass. 524, 183 N.E.2d 279, 280 (1962)):

> "[t]o constitute an arrest there must be either a physical seizure of the person by the arresting officer, or a submission to his authority and control."

In a recent case, in which we ruled an arrest had taken place when the defendant was told to stand in front of his car's headlights, we substituted for the latter part of the *MacKenzie* formulation such phraseology as "submitted to the officer's instruction" and "complied with the officer's direction", thereby indicating that something less than a direct order to come to the station-house can be an arrest. *State v. Babcock*, Me., 361 A.2d 911, 915 and n.4 (1976). Another of our recent cases cautions that in determining whether an arrest has occurred

---

**2.** Defendant did not claim that the alleged unnecessary delay in taking him before a magistrate should be taken into account as a factor which might have affected the voluntariness of his confession. Rather, his contention in the Superior Court, as well as before us on appeal, has been only that if such unnecessary delay existed, the sanction against it, to implement Rule 5(a) M.R.Crim.P., should be a *per se* prophylactic rule excluding from evidence a confession given by him while he remained in police custody during such period of unnecessary delay.

**3.** We therefore do not reach the other questions which might arise, whether: (1) if the first arrest was unlawful, the taint of its unlawfulness would be cured by the supervention of the second arrest, as a lawful arrest, made two hours later; or (2) if the taint of an unlawful arrest persisted, the type of police conduct here could reasonably be distinguished from the "exploitation" of it condemned by *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

"[t]he perspective must be that of the outside observer who views the entirety of the situation." *State v. Kelly,* Me., 376 A.2d 840, 847 (1977).

From the perspective of the "outside observer", and with an eye to the analysis we employed in *Kelly,* supra, we conclude that the police conduct at the Ramada Inn the evening of the 27th was such an "assertion of control over defendant's person", *id.* at 847, as to constitute an arrest. *Kelly,* supra, based its finding of no arrest on four factors:

"(1) the express finding by the presiding Justice that . . . [the arresting officer] intended none; (2) the lack of probable cause; (3) the failure of the officer to order defendant about in any respect, and (4) the absence of the indicia of detention such as a frisk, handcuffing and other physical contact." (376 A.2d 840, 847)

In contrast, there is here no such finding by the presiding Justice regarding the officers' intent, and our own review of the evidence persuades us that the only rational finding is that the officers intended to ensure that all of the suspects would come with them to headquarters. Moreover, there was objectively a legitimate basis for subjecting the defendant to police control. On the basis of their own direct sensory perceptions the police were justified, as our subsequent discussion will show, in forming a reasonable belief that a crime was being committed, thus to constitute a crime being committed "in their presence." Most importantly, it is clear that defendant was "ordered about", an element that buttresses our conclusion that the overall situation was laden with "indicia of restraint." Plainly, a person must be found arrested when the police swarm into his room with guns drawn, order him against the wall, frisk him, lead some of his companions away in handcuffs, present him with the Hobson's choice of "voluntarily" coming to headquarters or being arrested for Criminal Trespass, and escort him, flanked on both sides by guards, to a waiting cruiser.

We turn, then, to consider whether this arrest at 10:00 p. m. on Tuesday the 27th was lawful.

17–A M.R.S.A. § 15(1)(B) limits the power to arrest for relatively insignificant crimes to situations in which a Class D or Class E crime has been committed or is being committed in the presence of a law enforcement officer. The "in the presence" requirement is satisfied

"when one or more of the officer's senses afford him personal knowledge of facts which are sufficient to warrant a prudent and cautious law enforcement officer in believing that a Class D or Class E crime is being or has just been committed and that the person arrested has committed or is committing it." (§ 15(2)).

From this provision, read in the light of our recent decisions in *State v. Cowperthwaite,* Me., 354 A.2d 173 (1976) and *State v. Ronan,* Me., 380 A.2d 207 (1977), it is plain that a crime is committed "in the presence" of an officer who, although he may not have personal knowledge of all the facts constituting the crime, could reasonably infer those facts from others he has perceived directly through his own senses.

Here, the police had examined the Ramada Inn's register and held in their hands a registration card, made out for single occupancy in a room suitable for single or double occupancy, signed by a Deborah Rand. Once having gained entry, they found no Deborah Rand, but rather four young men whose clothing and other belongings were strewn all about. The condition and appearance of the suspects and the room supported the inference that they had been, or were about to commence, sleeping in it. These are

"facts which are sufficient to warrant a prudent and cautious law enforcement officer in believing"

Theft of Services valued at $500 or less, a Class E crime, is being committed in his presence. See 17–A M.R.S.A. §§ 15(1)(B) and (2), 357(1), (3) and (4), 362(5) (Supp. 1977, 1978).

The arrest of defendant at 10:00 p. m. on Tuesday, December 27th was a lawful ar-

rest. No basis exists, therefore, on which defendant can invoke the doctrine of the fruit of the "poisonous tree" to exclude his confession as evidence. There was in fact no "poisonous tree" of which defendant's confession could be the "fruit."

The entry is:

Appeal denied; judgment of conviction affirmed.

ARCHIBALD, J., did not sit.