STATE of Maine

v.

Linfield FRANKLIN.

Supreme Judicial Court of Maine.

Argued March 23, 1983.

Decided Aug. 3, 1983.

Anita M. St. Onge (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Jeffco, May & Smart, Stephen T. Jeffco (orally), David Smart, Portsmouth, N.H., for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER,* VIOLETTE, and WATHEN, JJ.

ROBERTS, Justice.

Linfield Franklin appeals from his conviction of murder, 17–A M.R.S.A. § 201(1)(A) (1983), following a jury trial in the Superior Court, York County. On appeal, the defendant argues that the Superior Court

erred in refusing to suppress oral and written statements and in excluding testimony of an expert witness. Because we conclude that the Superior Court erroneously excluded the expert testimony, we vacate the judgment.

I.

The evidence produced at trial would warrant belief in the following facts: Franklin is a 38-year-old unemployed machinist, working most recently as a taxi driver in the Kittery, Maine—Portsmouth, New Hampshire area where he has lived for the past ten years. He was born in Baton Rouge, Louisiana, where he was raised by a succession of parents, relatives, and stepparents. He has an eleventh grade education supplemented by one year of trade school training.

Franklin was convicted of murder[1] for the shooting death of his 25-year-old paramour, Jeannette Smith. Although she sometimes lived with her husband, Jeannette Smith frequently left her husband to live with Franklin for varying lengths of time. The relationship between Mrs. Smith and the defendant was unstable, but continued for the 5½ years preceding her death. At all relevant times Franklin, Mrs. Smith, and their pre-school age daughter lived on one side of a small two-family house in Kittery with two women and three male Cuban "boat lift" refugees.

The members of the household began drinking beer at approximately 8:30 p.m. on November 19, 1981 and began going to bed about 4:30 a.m. the next morning. During this time Franklin consumed between two and three six-packs of beer. At about 8:30 p.m. he also ingested two amphetamine tablets and between 11:00 and 11:30 p.m. shared a marijuana cigarette with approximately three other people. Mrs. Smith also drank beer that evening—enough that "she was starting to get loud." Both the de-

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. Title 17–A M.R.S.A. § 201(1)(A) reads as follows: "A person is guilty of murder if ... [h]e intentionally or knowingly causes the death of another human being."

fendant and the victim had a history of alcohol problems.

During the course of the party Franklin and Mrs. Smith had a brief argument, but quickly made amends. Evidently they quarreled frequently. Shortly after the other members of the household went upstairs to sleep, the couple quarreled again. Two gunshots were fired—one into the ceiling and one into Mrs. Smith's forehead at relatively close range. The defendant was heard leaving the house shortly after the second gunshot.

Franklin spent the next few hours sleeping in a truck. Between approximately 8:30 a.m. and 9:00 a.m. he was arrested as a "fugitive from justice" by officers of the Portsmouth Police Department as he attempted to "hitch" a ride to Seabrook, New Hampshire in search of employment. The arresting officer recovered five bullets from the defendant's pants pocket. Although Franklin admitted to carrying a gun "for protection," he did not possess a gun at the time of his arrest.[2]

Franklin was interrogated at the Portsmouth Police Station by both Portsmouth and Maine police officers. He made statements which were used against him at trial despite his pretrial attempts to suppress on grounds that the statements were made involuntarily and obtained during illegal detention. At trial, the defense sought to generate a reasonable doubt as to the necessary culpable state of mind by introducing evidence of intoxication. *See* 17–A M.R.S.A. § 37 (1983).[3] The defense also sought to use evidence of intoxication to mitigate the impact of Franklin's extra-judicial statements. Franklin claims that exclusion of the testimony of an expert witness contributed to the jury's failure to entertain an intoxication defense and resulted in his erroneous conviction of murder.

## II.

Franklin presents two arguments for reversing the trial court's denial of his motion to suppress. First, the defendant claims that the evidence does not support a finding beyond a reasonable doubt that the statements were voluntary. Second, the defendant argues that the statements should have been suppressed due to an alleged violation of M.R.Crim.P. 5(a).[4] We reject both of these arguments.

Franklin was interrogated throughout the day at the Portsmouth Police Station. Early in the day, a Portsmouth officer suggested immediate arraignment, but a Maine State Police detective preferred to wait for the arrival of a Maine Assistant Attorney General. Upon further inquiry, the Portsmouth officer was erroneously informed that court was no longer in session that

---

**2.** The defendant later "admitted" that he threw his gun (presumably the murder weapon) into the river as he crossed the bridge into Portsmouth. No murder weapon was introduced into evidence at trial.

**3.** Title 17–A M.R.S.A. § 37 (1983) reads in pertinent part as follows:

[E]vidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind.

. . . .

"Intoxication" means a disturbance of mental capacities resulting from the introduction of alcohol, drugs or similar substances into the body. . . .

**4.** M.R.Crim.P. 5(a) reads as follows:

**Appearance Before the Magistrate; Persons in Custody.** A person arrested, either under a warrant or without a warrant, who is not sooner released, shall be brought before a magistrate without unnecessary delay and in no event later than 48 hours after the arrest, excluding Saturdays, Sundays and legal holidays. If such appearance has not taken place within 48 hours after the arrest, excluding Saturdays, Sundays and legal holidays, such person shall be released from custody. When a person is arrested under a warrant and the arrest is made at a place 100 miles or more from the place where the warrant was issued, the person arrested, if bailable, shall, if he so demands, be taken before the nearest available magistrate or bail commissioner, who shall admit him to bail for appearance before the magistrate in the appropriate division. When a person arrested without a warrant is brought before a magistrate within the division within which the arrest was made, the complaint shall be filed with that magistrate forthwith.

day. Hence, Franklin apparently was not arraigned until the next day.

Franklin argued in the Superior Court, as he does on appeal, that, due to a variety of factors, his statements were not voluntary and that he did not knowingly and intelligently waive his rights. Specifically, the defendant argues that the confession was extracted after seven hours of interrogation when he was in an emotionally and mentally disturbed and confused condition; that he was under the influence of drugs and alcohol and had little sleep the night before; that he was not fully apprised of his rights and did not fully understand his rights; and that no inquiry was made into his educational background or his ability to read and write. Moreover, the defendant alleges that, although no promises or threats were made, his interrogation consisted of "repeated," "systematic," and "persistent" "pressure" and "demands" to remember and recount events of the night before for which he claimed a "blacked out" memory due to excessive alcohol consumption. The defendant further argued in the Superior Court, as he does on appeal, that the statements should be suppressed as a remedy or sanction for failure to bring him before a magistrate without unnecessary delay.

The interrogating police officers testified at the suppression hearing that Franklin appeared "normal," that his answers were coherent, and that he exhibited no signs of intoxication. The Superior Court stated that "the court is ... satisfied beyond a reasonable doubt that the defendant understood his rights and knowingly and voluntarily waived them. His conduct, his manner, his answers and apparent awareness all overwhelmingly lead to this conclusion." The Superior Court also concluded that the police "scrupulously advised defendant of his rights ... several times ...." Finally, the court found that the failure promptly to bring the defendant before a magistrate was an "inadvertent mistake" and "not for some nefarious police purpose ... as "to extract a confession...."

## A. Voluntariness of the Defendant's Statements

■■■ The State must establish the legal admissibility of a confession by the strict standard of "proof beyond a reasonable doubt." *State v. Collins,* 297 A.2d 620, 627 (Me.1972). The trial justice must determine whether a statement is voluntary by considering the "totality of the circumstances." *See State v. Caouette,* 446 A.2d 1120, 1124 (Me.1982). The "trial court's determination will not be disturbed on appeal if there is evidence providing rational support for its conclusion." *Id.* (citations omitted). Adopting the values first articulated in *Collins,* we held in *Caouette* "that in order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect." *Id.* at 1123; *see also State v. Hazelton,* 330 A.2d 919, 924 (Me.1975) ("Usual competency" to waive rights viewed in terms of "mental faculties and emotional and behavioral processes.").

■ We are satisfied that the State has met its burden to establish the legal admissibility of the defendant's confession beyond a reasonable doubt. There is evidence in the record providing rational support for the motion justice to conclude that, under the totality of the circumstances, the defendant's statements were voluntary. Neither the police conduct nor the interrogation at the Portsmouth Police Department amounted to compulsion. The defendant concedes that he was neither threatened nor promised anything. Moreover, the evidence of drug and alcohol consumption does not compel the fact-finder to entertain a reasonable doubt that Franklin was capable of rational and voluntary action. The evidence is sufficient to support the conclusion that, at least by approximately 9:00 a.m. on November 20, 1981, the defendant was rational and coherent.[5]

---

5. At trial, the defendant's own expert witness, psychiatrist Ulrich Jacobsohn, testified on cross-examination that standard intelligence tests showed that the defendant is "above average to superior in intelligence."

## B. *Delay in Arraignment*

Franklin's argument that his statements should be suppressed due to a violation of M.R.Crim.P. 5(a) is also without merit. Defense counsel urges us to apply a Maine rule, rather than the analogous New Hampshire rule,[6] even though the defendant was arrested, detained, and presumably brought before a magistrate in New Hampshire. Both rules emphasize the need to proceed without "unreasonable or unnecessary delay"—a requirement also found in the federal rules. Fed.R.Crim.P. 5(a).

■ In Maine, to determine whether there was unnecessary delay, the court must view the "totality of the circumstances" surrounding the delay in each case. *State v. Thurston,* 393 A.2d 1345, 1347–48 (Me.1978). The phrase "without unnecessary delay" must be interpreted in light of the general policies behind the rules, *see, e.g., id.;* 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated,* § 5.1 at 37 (1967), and the "common sense" meaning of the words considering "the availability of a District Court judge in the area...." Glassman, *supra,* § 5.1 at 38.

■ Given the similarity of the Maine and New Hampshire rules, regardless of which procedural rules apply, we cannot say that the Superior Court erred in refusing to find that there was unreasonable or unnecessary delay in bringing the defendant before a magistrate. *See Thurston,* 393 A.2d at 1347–48. Further, even if the Superior Court had found unnecessary or unreasonable delay, neither Maine, *State v. Carter,* 412 A.2d 56, 58 n. 2 (Me.1980); M.R.Crim.P. 5(a) advisory committee's note to 1967

amend., Glassman, *supra,* at 34, nor New Hampshire, *see State v. Lavallee,* 104 N.H. 443, 446–447, 189 A.2d 475, 478–79 (1963), has adopted the *per se* prophylactic rule promulgated for the federal courts by the United States Supreme Court. In *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Supreme Court established that a confession, procured while the defendant is held in police custody during a period of unnecessary delay, is inadmissible.[7]

In *Thurston,* we reserved the "responsibility ... to determine the proper sanction to impose to ensure that the values safeguarded by Rule 5(a) ... will be adequately preserved and fostered." *Thurston,* 393 A.2d at 1348. The Criminal Rules Advisory Committee recommended that the question of an appropriate sanction for violation of Rule 5(a) be left for determination "when the issue is appropriately raised at some judicial proceeding." Glassman, *supra,* § 5.1 at 39. Because we find no unnecessary delay in this case, as in *Thurston,* we need not reach at this time, the question of the appropriate remedy for violation of M.R.Crim.P. 5(a). The defendant's statements were properly admissible as evidence against him.

### III.

Franklin next argues that the Superior Court erred in excluding testimony of an expert witness, Patrick Demers. Because we agree, we vacate the judgment on this ground. Upon an objection by the State on the grounds of relevancy and qualification in the area of expertise, the Superior Court

---

**6.** The applicable New Hampshire statutes, N.H. Rev.Stat.Ann. §§ 594:19–a(II) and 594:20–a (1974), read as follows:

**594:19–a Detention of Person Arrested.**
I. ...
II. Without Warrant. An officer arresting a person without a warrant shall without unreasonable delay take him before the court to answer a complaint for the offense.

**594:20–a Place and Time of Detention.** When a person is arrested with or without a warrant he may be committed to jail, to the house of correction, to a police station or other place provided for the detention of offenders, or otherwise detained in custody; provided however, that he shall be taken before a district or municipal court without unreasonable delay but not exceeding twenty-four hours, Sundays and holidays excepted, to answer for the offense.

**7.** The rule in *Mallory v. United States,* "is a rule of evidence adopted by the United States Supreme Court and is not a constitutional requirement." Glassman, *supra,* § 5.1 at 39.

heard an offer of proof in the absence of the jury. On voir dire, Demers testified to a background in chemistry and pharmacology. He testified about the amount of alcohol required to produce a given blood alcohol level under varying circumstances. He then related each of five levels of blood alcohol to various physical and psychological manifestations.

Evidently as a result of a conference in chambers, the court sustained the State's objection that Demers' testimony should be excluded for lack of qualifications and relevance.[8] On the record, the trial justice stated that Demers' testimony failed to meet the requirements of M.R.Evid. 702[9] and 703[10] and did not relate in any way to the issue of the required culpable state of mind as described in 17–A M.R.S.A. § 37(3)(A). The court apparently also excluded Demers' testimony because it "would not be of assistance to the fact-finder and that it isn't really specifically attuned to any hypothetical question based on the evidence presented in this case."

Defense counsel argued in the Superior Court, as he does on appeal, that Demers would provide the jury with a "yardstick" with which it could find both a blood-alcohol level for the number of beers they believed the defendant consumed and the corresponding level of diminished physical and mental faculties. In response, the State stands by the Superior Court's ruling and offers two additional "problems" with Demers' testimony: (1) "there is not sufficient information to determine what the Defendant's blood alcohol test would have been on November 20th"; and (2) "assuming ... Demers could establish the Defendant's

blood alcohol level, there is insufficient evidence to determine how this would affect his mental capacities at the time of the shooting...." We find no merit in any of the State's contentions.

■ Determination of the admissibility of expert testimony is a preliminary question for the trial justice and the judge's decision will not be reversed on appeal except for a clear abuse of discretion. *E.g.,* *State v. Goyette,* 407 A.2d 1104, 1114 (Me. 1979); *State v. Libby,* 153 Me. 1, 8, 133 A.2d 877, 881 (1957); Field & Murray, *Maine Evidence* § 702.1 at 171 (1976); *see also* *State v. Mylon,* 462 A.2d 1184, 1187 (Me.1983) (exclusion of expert rebuttal testimony). Based upon the defendant's offer of proof we conclude that the trial court erred in refusing to permit Patrick Demers to testify before the jury.

If viewed by the jury as credible, Demers' testimony could provide assistance to the fact-finder in at least three areas. First, Demers' testimony could provide a "sequence of impact" for the intoxicating effects of alcohol: the mental and physical manifestations of continuous alcohol consumption. Second, Demers' testimony could inform the jury of the effects of habitual drinking on tolerance and the ability of habitual drinkers to adjust motor coordination despite impaired mental functions. Finally, Demers' testimony could provide a "yardstick" by which the jury might determine, based on blood-alcohol level, whether the defendant was in fact intoxicated when he shot Mrs. Smith. With Franklin's own testimony serving as the foundation (in addition to witnesses called

---

**8.** Again, we caution against the failure to record in-chambers conferences.

**9.** M.R.Evid. 702 reads as follows:

**TESTIMONY BY EXPERTS**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

**10.** M.R.Evid. 703 reads as follows:

**BASIS OF OPINION TESTIMONY BY EXPERTS**

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

by the State), Demers' testimony could provide the blood-alcohol levels associated with specific quantities of alcohol consumed and the corresponding mental and physical manifestations of a particular blood-alcohol level. *Cf. State v. Collin,* 441 A.2d 693, 695–96 (Me.1982) (absence of evidence or offer of proof linking defendant with expert testimony on effect of alcohol consumption diminished probative value of evidence). In short, Demers' testimony would help explain the seeming contradiction of an allegedly intoxicated defendant who is able to perform a variety of purposeful activities and functions.

Hence, Demers' testimony would constitute probative evidence with respect to two ultimate issues. First, Demers' testimony relates to Franklin's intoxication defense under 17–A M.R.S.A. § 37. Second, Demers' testimony contributes to the possibility of reducing the murder charge to a manslaughter verdict.[11] Franklin did not deny that his conduct caused Jeanette Smith's death. The entire thrust of Franklin's defense was one of intoxication and an attempt to reduce the murder charge to manslaughter. The evidence of intoxication would be relevant to the culpable mental states of intentional and knowing. 17–A M.R.S.A. § 201(1)(A). If Franklin could generate a reasonable doubt with respect to these mental states, the jury might return a manslaughter verdict.

We also determine that, under the circumstances of this case, Demers' testimony was admissible under the requirements of M.R.Evid. 702 and 703. In the absence of any demonstration by the State that Demers lacked qualification, we find no basis for determining that Demers—an experienced chemist and pharmacologist—was not qualified to testify about the defendant's intoxication. We are convinced that on the subject of intoxication, the jury could have received "appreciable help" from Demers. Field & Murray, *supra,* § 702.1 at 171–72 (quoting J. Wigmore, *Evidence* § 1923). In addition, the Maine rules do not require Demers' testimony to be "attuned" to any specific hypothetical situation, as the Superior Court suggests. *See* M.R.Evid. 703 advisers' note.

We further reject the State's contention that exclusion of Demers' testimony was "harmless error" within the meaning of M.R.Crim.P. 52(a). Rather than being merely cumulative of Dr. Ulrich Jacobsohn's expert testimony, Demers' testimony in conjunction with Jacobsohn's testimony, tended to explain both the defendant's intoxication at the time of the shooting and the defendant's subsequent conduct. Moreover, unlike many appellate cases where the defendant challenges the introduction of expert testimony by the state, the case at bar involves exclusion of evidence proffered by a criminal defendant. In such cases, strict application of state procedural rules, which unduly inhibit a defense, or deny the jury evidence necessary for it to make an informed decision, undoubtedly affect the defendant's substantial rights.

Because we conclude that the trial justice erred in excluding Demers' testimony, we vacate the judgment.

The entry is:

Judgment vacated.

Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

11. In fact, the jury received instructions on intoxication and manslaughter. Title 17–A M.R.S.A. § 203 (1983) reads in pertinent part as follows: "A person is guilty of manslaughter if he: A. Recklessly, or with criminal negligence, causes the death of another human being...."