STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss.                           CRIMINAL ACTION
                                        Docket No. CR-12-237
                                        /N/M - KEN - 11/21/2012


THE STATE OF MAINE,

                                        **DECISION AND ORDER**
v.                                      **ON DEFENDANT'S MOTION TO**
                                        **SUPPRESS STATEMENTS**


MICHAEL YOUNG,
        Defendant


This matter comes before the Court on Defendant Michael Young's Motion to Suppress

Statements made to law enforcement on June 11, 2011, July 12, 2011, and July 20, 2011 on the

grounds that the admission of such statements would violate his constitutional rights under the

Fifth and/or Sixth Amendments.

For purposes of defining each of the Defendant's encounters with law enforcement on the

aforementioned dates, the Court finds that there are four relevant encounters for purposes of

suppression: (1) statements made by the Defendant while in custody at the Augusta Police

Department booking room with Patrolman Doody from 5:44 a.m. until around 7:23 a.m. on June

11, 2011; (2) statements made to Detectives Tupper and Cote during the course of a custodial

interrogation beginning at 8:10 a.m. and lasting for five hours and twenty-seven minutes on June

11, 2011; (3) statements made to Detectives Tupper and Cote on a non-custodial re-approach by

law enforcement at the Defendant's then-residence on July 12, 2011; and (4) statements made to

Detectives Tupper and Cote during a non-custodial arranged meeting between the detectives and

the Defendant at the Augusta Police Department on July 20, 2011. The Court will hereinafter

1

refer to the different encounters as Interviews 1, 2, 3, and 4.

In his motion, the Defendant asserts that he first invoked his right to counsel on June 11, 2011 shortly after he was arrested on a warrant issued for an unrelated charge, and that he was thereafter subject to custodial interrogation by both the Augusta Police Department and the Maine State Police on June 11, 2011 in violation of his *Miranda* rights. (Def.'s M. Suppress ¶¶ 1-2.) Defendant argues that the statements made to law enforcement officials during the July 11 custodial interrogation, and on re-approaches by law enforcement on July 12 and 20, 2011 should accordingly be suppressed because the interrogations were *Miranda* violations, and because the statements Defendant made therein were all involuntary.[1] (Def.'s Mem. in Support of M. Suppress 4.)

The Defendant and the State agree that the June 11, 2011 interview (Interview 2) constituted a custodial interrogation, and the parties also agree that the interviews that took place on July 12 and 20, 2011 did not take place while the Defendant was in custody. (Def.'s Mem. in Support of M. Suppress 11; State Reply Mem. 6-8.) While the Defendant argues that the initial June 11, 2011 *Miranda* violation serves to taint all subsequent discussions between the Defendant and law enforcement, the State counters by the July 12 and 20, 2011 interviews constituted valid re-approaches. (State Reply Mem. 6-8.) Accordingly, the State submits that the June 11, 2011 interviews should be suppressed as technical *Miranda* violations,[2] but that statements made during the July 12 and July 20, 2011 interviews should not be suppressed for

---

[1] Defendant did not assert that any of his statements were involuntary in his June 13, 2012 Motion to Suppress. The State, in its Reply Memorandum, argues that all statements made by the Defendant were voluntary under both state and federal law (State Reply Mem. 1), and the Defendant, in his October 22, 2012 Memorandum in Support, argues for the first time that all statements made subsequent to invoking his right to counsel on June 11, 2011 were involuntary. (Def.'s Mem. in Support of M. Suppress 4.)
[2] The State concedes that the June 11 interviews should be suppressed as *Miranda* violations, but not because the statements made by the Defendant were involuntary. (State Reply Mem. 5.)

any reason. (State Reply Mem. 1.) While the Court is aware the State has stipulated that the June 11, 2011 interviews should be suppressed, it will address the arguments made by both parties and analyze the relevant law before doing so. The Court will also address the July 12 and July 20, 2011 re-approaches by law enforcement.

## STATEMENT OF FACTS

At approximately 5:15 a.m. on June 11, 2011, Michael Young called the Augusta Police Department to summon police officers to the Augusta apartment he shared with his domestic partner, David Cox. (Def.'s Mem. in Support M. Suppress 1; State Reply Mem. 2.) Patrolman Paul Doody was among the officers who arrived at the scene, and when he entered the apartment he observed the Defendant inside, and the room in disarray. (State Reply Mem. 2.) Patrolman Doody also observed David Cox lying on his side, face down, with an overturned bicycle nearby, and a large amount of pooled blood. (Def.'s Mem. in Support M. Suppress 1; State Reply Mem. 2.) The Defendant also appeared to have blood on him, and there was a knife on the floor of the kitchen, away from where David Cox was lying. (Def.'s Mem. in Support M. Suppress 1-2; State Reply Mem. 2.)

Patrolman Doody had a brief conversation with the Defendant while inside the apartment, and the Defendant was permitted to wash the blood off his hands. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 2.) Patrolman Doody then escorted the Defendant to his cruiser, and had him sit in the back seat. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 2.) After communicating with regional dispatch, Patrolman Doody learned that the Defendant had an outstanding warrant for unpaid fines. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 2-3.) The Defendant informed Patrolman Doody that he had $2,000 at his apartment that would cover his bail. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 3.)

3

Patrolman Doody then transported the Defendant to the Augusta Police Station, and took him to the booking room. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 3.) The booking video began at 5:44 a.m. (Def.'s Mem. in Support M. Suppress 2). Patrolman Doody did not read the Defendant the requisite *Miranda* warning but the parties agree that he was not conducting an interrogation.[3] (State Reply Mem. 3.) The Defendant invoked his right to an attorney approximately thirty-five minutes after being placed in the booking room.[4] (Def.'s Mem. in Support M. Suppress 2.) He also said he wanted to make a phone call to find out about David Cox's condition. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 3.) When the Defendant asked to leave, Patrolman Doody informed him that he was being held in order for Maine State Police to come interview him. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 3.)

Starting at 8:10 a.m., Detective Christopher Tupper of the Maine State Police and Detecive Jason Cote of the Augusta Police Department came to interview the Defendant. (Def.'s Mem. in Support M. Suppress 2; State Reply Mem. 3.) Before they began asking the Defendant questions, the detectives read the Defendant the *Miranda* warning.[5] (Def.'s Mem. in Support M. Suppress 3; State Reply Mem. 3-4.) The interview continued, according to the Defendant, for

---

[3] During this time in the booking room, the Defendant made several spontaneous statements to Patrolman Doody about the incident at the apartment. At one point the Defendant lamented that an accident like this could occur "from David being an idiot, and have this go down like this – it's so irresponsible, and it don't make no sense." (Joint Exh. A at 1:08-1:22.) After providing an explanation for how the accident might have occurred—he said that David Cox was trying to "fix the place up," and fix the Defendant's bicycle—he asks Patrolman Doody, "I am supposed to be telling you this?" (*Id.* at 1:56-1:58.)

[4] (*See* Joint Exh. A at 40:09-1:11.)

[5] The Defendant's Memorandum notes that prior to being read his *Miranda* warning, the Defendant asked and was told that David Cox had died. (Def.'s Mem. in Support M. Suppress 2-3.)

4

five hours, twenty-seven minutes, and ended when the Defendant stated he wanted to speak with an attorney.[6] (Mem. in Support M. Suppress 3; State Reply Mem. 4.)

About one month later, on July 12, 2011, Detectives Tupper and Cote re-approached the Defendant at his cousin's home in China where he was staying. (Mem. in Support M. Suppress 3; State Reply Mem. 4.) The Defendant agreed to speak with the detectives, and both parties agree that the interview was noncustodial. No attorney was present on behalf of the Defendant. (Mem. in Support M. Suppress 3; State Reply Mem. 4.) The interview lasted for approximately one hour and seven minutes, was non-confrontational. It ended when the detectives invited the Defendant to speak with them again. (State Reply Mem. 4.)

On the morning of July 19, 2011, Detectives Tupper and Cote returned to the Defendant's cousin's house in China to speak with the Defendant again. (State Reply Mem. 4.) The Defendant told the detectives that he was unavailable, but said that he would call them to set up a time and place to meet. (State Reply Mem. 4.) On July 20, 2011, the detectives and the Defendant agreed to meet at the Augusta Police Station in the afternoon. (State Reply Mem. 4.) The interview began at 2:00 p.m. and lasted approximately one and a half hours. (Def.'s Mem. in Support M. Suppress 3; State Reply Mem. 5.) At the conclusion of the interview, the detectives gave the Defendant a ride to the library. (State Reply Mem. 5.)

## DISCUSSION

[6] Defendant notes that he had been making a diagram during the interview. (Def.'s Mem. in Support M. Suppress 3.) When Detective Tupper asked the Defendant if he could have the diagram, the Defendant said no, but the detective took the diagram and ended the interview. (*See id.*) Additionally, the Defendant's request for an attorney was unequivocal; he told Patrolman Doody to tell his superior: "I demand a lawyer now." (Booking Room Interview, Disc 1.)

## A. All Statements Made by the Defendant to Law Enforcement at the Apartment are Admissible Because the Defendant Was Not in Custody.

The Defendant does not challenge the admissibility of any statements he made to law enforcement at the 12 Green Street apartment in Augusta on the morning of June 11, 2011. The parties agree that the Defendant was not in custody at the scene, that all statements were voluntary, and that because the statements were not made during custodial interrogation, all statements made are admissible.

## B. All Statements Made by the Defendant After Being Placed in Patrolman Doody's Squad Car and Taken to the Augusta Police Department Until the Defendant Invoked His Right to Counsel are Admissible.

The statements made by the Defendant while in the booking room with Patrolman Doody on July 11, 2011 are admissible up to the point of his invocation of counsel because they were spontaneous statements, and not the product of any questioning or interrogation. The State does not dispute that the Defendant was in custody for purposes of *Miranda*. In *California v. Beheler*, the U.S. Supreme Court determined that a person is in custody for purposes of *Miranda* when "there is a 'formal arrest or restraint of movement' of the degree associated with a formal arrest." 463 U.S. 1121, 1125 (1983). Under Maine law, which comports with its federal counterpart, a person is in custody if "a reasonable person in [the defendant]'s position would have believed he was 'actually in police custody and being constrained to a degree associated with formal arrest.'" *State v. Gardner*, 509 A.2d 1160, 1163 (Me. 1986) (citing *State v. Pike*, 632 A.2d 132, 133 (Me. 1993)). Accordingly, the Court finds that the Defendant was in custody at the scene of the crime when Patrolman Doody placed the Defendant in his cruiser in order to transport him to the Augusta Police Department.

The Defendant, while in custody, made several spontaneous statements to Patrolman Doody while the two were in the Augusta Police Department booking room; these statements,

however, were not the product of questioning or interrogation. The Court is guided by a two-part inquiry set forth in *Miranda v. Arizona* to determine whether inculpatory or exculpatory statements stemming from a custodial interrogation are admissible when the necessary procedural safeguards, *i.e.*, the *Miranda* warnings, have not been properly administered. *See State v. Cumming*, 634 A.2d 953, 956 (Me. 1993) (holding that "'*Miranda* warnings are required only when a defendant is in custody and subject to interrogation.'") The U.S. Supreme Court, in *Miranda*, defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

While the Defendant here was clearly in custody under both Maine and federal law, as both parties acknowledge, missing is the necessary element of questioning initiated by law enforcement officers. In the Court's review of Interview 1, Patrolman Doody did not once ask the Defendant anything about David Cox's stabbing. All conversation was initiated by the Defendant, and his spontaneous statements—he discusses the circumstances under which he found David Cox's body, what David Cox was doing before he was stabbed, and also that he was unsure about whether he should talk to Patrolman Doody about the situation—were not the product of any prompting, hinting, questioning, or encouragement by Patrolman Doody.

**C. Any Post-Invocation Statements Made to Patrolman Doody and to Detectives Tupper and Cote (Interview 2) Should Be Suppressed as Technical *Miranda* Violations Because the Defendant Had Previously Invoked His Right to Counsel, and Did Not Make a Valid Waiver of His Rights Under the Fifth Amendment.**

A primary tenet of *Miranda v. Arizona* is "the right to have counsel present at any custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981). The warnings

7

required by *Miranda* must be issued before the police are permitted to question a suspect whom it has in custody, or alternatively, before the police can deprive a suspect of the freedom of movement in any significant way. *See Beheler*, 463 U.S. at 1125. Establishing whether *Miranda* warnings are required is determined by evaluating whether the person who will be subject to interrogation is in custody, a determination heretofore discussed. Maine law additionally provides that the factors derived in *Gardner*—the "reasonable person" analysis of a number of objective factors—"are not to be viewed in isolation, but rather in their totality." *Holloway*, 2000 ME 172, ¶ 19, 760 A.2d 223.

The U.S. Supreme Court has continued to uphold the provisions of *Miranda* because of the inherent potential for abuse, and the "[f]ailure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). It is under this overarching premise that the Defendant's initial—and controlling—invocation of his right to counsel occurred during Interview 1, and Defendant correctly cites the prophylactic rule of *Miranda v. Arizona*, which states:

> [i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to the police, they must respect his decision to remain silent.

384 U.S. 436, 474 (1966).

The effect of this rule is that law enforcement may only continue to interrogate someone in custody who has either had the opportunity to consult with an attorney, or who has made a voluntary waiver of his right to counsel. *See Roberson*, 486 U.S. at 682 (describing the procedural effect of a person in custody invoking his right to counsel). First, if an accused has invoked his right to counsel during a custodial interrogation, a valid waiver of that right cannot

be established by showing that the accused, after being his read his rights, responded to police questioning. *See Edwards*, 451 U.S. at 485 (holding that "it is inconsistent with *Miranda* and its progeny for the authorities, at their insistence, to re-interrogate an accused in custody if he has clearly asserted his right to counsel."). In other words, that invocation of counsel controls, absolutely, until the accused has had a meaningful opportunity to consult with an attorney.[7] *See Miranda*, 384 U.S. at 474.

The U.S. Supreme Court has established heightened requirements for proving that a person in custody has adequately waived their right to have counsel present during a custodial interrogation. The specific standard, derived by the Court in *Edwards v. Arizona*, states:

> waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Edwards*, 451 U.S. at 482. Rather than highlighting circumstances in which the waiver requirements have been complied with, the Supreme Court emphasizes the effect on subsequent questioning of an invalid waiver. Indeed, the defendant is not subject to further questioning unless he himself "initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85.

---

[7] The Supreme Court, in *Minnick v. Mississippi*, addressed precisely what constitutes a meaningful opportunity to consult with counsel. 498 U.S. 146 (1990). The Court emphasizes the importance of counsel being "present" in the interrogation room, and the right to have counsel be "made available" to the accused "refers to more than an opportunity to consult with an attorney outside the interrogation room." *Id.* at 152. Additionally it ruled that the Court "decline[s] to remove protection from police-initiated questioning based on isolated consultations with counsel who is absent when the interrogation resumes." *Id.* at 154. Once the defendant's right to counsel has been invoked, therefore, it must be scrupulously honored, and any statements made outside the presence of counsel, even if the defendant has had an opportunity to consult with an attorney, are likely to be held suppressible.

It is undisputed that the Defendant was in custody for *Miranda* purposes before he even arrived at the Augusta Police Station with Patrolman Doody on June 11, 2011, and the State further acknowledges that prior to the formal interview with Detectives Tupper and Cote (*i.e.,* Interview 2), that the Defendant invoked his right to counsel. (State Reply Mem. 5-6.) Additionally, the State does not assert that the Defendant made a valid waiver of his right to counsel, and concedes that the statements made during Interview 2 should be suppressed from the State's case-in-chief as a technical *Miranda* violation. (State Reply Mem. 6.)

**D. Neither the July 12, 2011 nor the July 20, 2011 Re-approach Interviews Conducted by Detectives Tupper and Cote Should Be Suppressed Because the Defendant Was Not In Custody, and the Detectives Complied With the Mandated Waiting Period Established in *Maryland v. Shatzer*.**

The Court looks to *State v. Michaud* to engage in a more specific inquiry of whether the Defendant, during either the July 12 or July 20, 2011 re-approaches, was in custody. In *Michaud*, the Law Court derived a ten-factor test to analyze whether a person is in custody:

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned familiar surroundings;

10

(8)     the number of law enforcement officers present;

(9)     the degree of physical restraint placed upon the suspect; and

(10)    the duration and character of the interrogation

1198 ME 251, ¶ 4, 724 A.2d 1222, 1226. The Court agrees with the State that a careful application of these factors to the circumstances of both reapproaches reveal that the Defendant was not in custody for purposes of *Miranda*.[8]

The July 12, 2011 interview was conducted at the home of the Defendant's cousin, where the Defendant was staying. It was not conducted at a police station, or at another location likely to create custodial undertones. Even though the detectives initiated the contact with the Defendant, the Defendant was, within that context, able to control where on the premises the interview was actually conducted. Nothing in the interview transcript suggests that the Defendant believed he was not free to leave at any time and nothing in the Defendant's demeanor gave them reason to believe the Defendant was unaware that he was free to leave, under a reasonable person standard. Although the State concedes that the Defendant was obviously the focus of the investigation, that fact alone is insufficient to transform the interview into a custodial interrogation. The Defendant stated throughout his interviews that he often stayed at the home of his cousin in China, where the July 12 reapproach was conducted, and thus his surroundings were assuredly familiar. Only two law enforcement officials were present— Detectives Tupper and Cote. The Defendant was not physically restrained in any way during the interview. Finally, the interview lasted about sixty-seven minutes, which the State asserts is a relatively short duration, and the tone of the discussion was conversational. All of these factors,

---

[8] The Court notes that the Defendant acknowledges that both the July 12 and July 20, 2011 re-approaches were non-custodial. (Def.'s Mem. in Support of M. Suppress 11-12.)

when viewed in their totality, *see Holloway*, 2000 ME 172, ¶ 19, 760 A.2d 223, reveals that the investigatory interview was a non-custodial interrogation.

The State asserts, and the Court agrees, that applying the same ten-factor test to the July 20, 2011 interview leads to an identical conclusion. The material differences with the July 20 interview—it took place in the Augusta Police Station, was longer at a length of approximately ninety minutes—are not enough to overcome to totality of the circumstances application, and was the Court finds that the July 20, 2011 was similarly non-custodial.

The Defendant further asserts that his original invocation of counsel on June 11, 2011 while in the booking room with Patrolman Doody was "blatantly" ignored throughout the rest of that day, and also when the Defendant was re-approached by Detectives Tupper and Cote a month later, because he still had not had an opportunity to consult with counsel. The Defendant argues that since he had invoked his right to counsel twice on June 11, 2011, failing to provide him with an attorney for the July interviews violated his rights under both the Fifth and Sixth Amendments. The Court disagrees.

As the State points out, the Defendant's rights under the Fifth Amendment mean that when a request to consult with counsel is made, all interrogation must cease. *See Edwards*, 451 U.S. at 484-85. However, law enforcement is not indefinitely prohibited from questioning the defendant. In *Maryland v. Shatzer*, the U.S. Supreme Court held that so long as fourteen days have gone by since the defendant last requested an attorney, the police are permitted to begin questioning him again. *See* 130 S. Ct. 1213, 1223 (2010) (holding that the Court "think[s] it appropriate to specify a period of time to avoid the consequence that continuation of the *Edwards* presumption 'will not reach the correct result most of the time.'").

12

While the facts of *Shatzer* are distinguishable from the facts in the instant matter, the Court clearly held that the "*Edwards* prophylaxis is not perpetual; . . . a break in custody reduces the inherently compelling pressure upon which *Edwards* was based . . . ." *Id.* The Court finds that the State Police detectives' re-approach of the Defendant in both July, 2011 interviews did not violate his rights. Those interviews were non-custodial, and sufficient time had elapsed since he was in custody such that the Defendant was no longer subject to the kinds of compelling pressure with which *Edwards* was concerned.

### E. None of the Statements Made by the Defendant to Either Patrolman Doody or Detectives Tupper and Cote Were Involuntary; The State Has Met Its Burden of Proving Voluntariness Beyond a Reasonable Doubt.

Under Maine law, voluntariness is defined as follows: "[a] confession is voluntary if it results from the free choice of a rational mind, it if it is not the product of coercive police conduct, and if, under the circumstances its admission would be fundamentally fair." *State v. Mikulewicz*, 462 A.2d 497, 501 (Me. 1984). Maine law differs from federal law pertaining to the voluntariness requirement in two different ways; first, in Maine, the state has the burden of proving voluntariness beyond a reasonable doubt, whereas the federal standard only requires that voluntariness be established by a preponderance of the evidence. *See State v. Collins*, 297 A.2d 620, 626-27 (Me. 1972). The second difference has to do with the requirement of compulsion. Under *Colorado v. Connelly*, the U.S. Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 479 U.S. 157, 167 (1986). In Maine, however, a defendant's claim of compulsion will frequently stem from "police elicitation or conduct, [but] that element is not a *sine qua non* for exclusion . . . ." *State v. Caouette*, 446 A.2d 1120, 1123 (Me. 1982).

Under Maine law, in order to find a statement voluntary, "it must first be established that it is the result of defendant's exercise of his own free will and rational intellect." *State v. Caouette*, 446 A.2d 1120, 1123 (Me. 1982). Applying this measurement to the facts at hand, none of the circumstances surrounding these multiple interviews suggest that the Defendant's free will was overborne in any way. In Interview 1, for example with Patrolman Doody, all of the Defendant's statements were spontaneously and freely made, and none were the product of prompting or encouragement from law enforcement officials. In Interview 2, the Defendant was clearly aware of the implications of being read the *Miranda* warnings, repeated them back so as to reflect his understanding, and despite being made aware that he was not required to say anything outside the presence of counsel, proceeded to answer the detectives' questions anyway. At no time during the June 11, 2011 interview did Detectives Tupper and Cote overreach or compel the Defendant to answer their questions in any way by making threats or by indicating that the Defendant would be arrested following the interview.

In addition, at the time the Defendant was brought to the police station, it did not appear, nor is it alleged, that he was under the influence of either alcohol or drugs. There is no indication that the Defendant was incapacitated in any way, and it is clear that the decision to speak with law enforcement was the product of the Defendant's free will. Voluntariness is determined by evaluating the totality of the circumstances, and here, the Court finds that the State has met its burden of proving voluntariness beyond a reasonable doubt. The Court can find no instances of police compulsion or coercion. More fundamentally, there is simply no evidence that the Defendant's did not stem from the free choice of his rational mind.

14

The entry is:

Defendant's Motion to Suppress Statements is GRANTED in part and DENIED in part. The Court finds that the State has proven that all statements made by the Defendant on June 11, 2011, July 12, 2011 and July 20, 2011 were voluntary beyond a reasonable doubt.

In addition, the Court finds that the statements made by the Defendant at his apartment on June 11, 2011 are admissible as the statements were not the product of interrogation, and he was not in custody. The Court finds that the statements made by the Defendant on June 11, 2001 to Officer Doody after he was arrested on the warrant for unpaid fines, prior to invocation, are admissible as they were not the product of interrogation, even though he was in custody. The Court finds that any statements (if any) made by the Defendant to Officer Doody from the moment he invoked his right to counsel while in custody on June 11, 2011 are inadmissible in the State's case in chief. The Court further finds that any statements the Defendant made to Detective Jason Cote and Christopher Tupper of the Maine State Police on June 11, 2011 are inadmissible in the State's case in chief as he was in custody, he was subjected to interrogation, he had not been advised of his rights, he had invoked his right to counsel, and he did not effectively waive his 5th or 6th amendment rights.

Finally, the Court finds that the statements made to Detectives Tupper and Cote on July 12, 2011 and also on July 20, 2011 are admissible under *Maryland v. Shatzer* and because he was not in custody.

The Court is informed by defense counsel that Mr. Young may wish to waive his constitutional right to trial by jury. The Court will therefore set this matter for status conference on November 27, 2012 at 3:00 p.m. If the Defendant waives his right to trial by jury, the case will be heard by the Court beginning December 17, 2012.

_____11/21/12_____

**DATE**

_____

**SUPERIOR COURT JUSTICE**

16

MICHAEL T YOUNG
12 GREEN STREET APT 1
AUGUSTA ME 04330

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CR-2012-00237

**DOCKET RECORD**

DOB: 05/21/1971
Attorney: PAMELA AMES
       LAW OFFICE OF PAMELA J AMES
       237 MAIN STREET
       WATERVILLE ME 04901
       APPOINTED 04/12/2012

State's Attorney: ANDREW BENSON

Filing Document: CRIMINAL COMPLAINT
Filing Date: 03/22/2012

Major Case Type: HOMICIDE

## Charge(s)

1   MURDER                                    06/11/2011 AUGUSTA
Seq 621   17-A  201(1)(A)          Class M  Charged with INDICTMENT on Supplem

## Docket Events:

03/23/2012 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 03/22/2012

03/23/2012 Charge(s): 1
       SUPPLEMENTAL FILING -  INDICTMENT FILED ON 03/22/2012

03/23/2012 WARRANT -  ON COMP/INDICTMENT REQUESTED ON 03/22/2012

03/23/2012 BAIL BOND -  NO BAIL ALLOWED SET BY COURT ON 03/22/2012

03/23/2012 WARRANT -  ON COMP/INDICTMENT ISSUED ON 03/23/2012

03/28/2012 Party(s):  STATE OF MAINE
       ATTORNEY -  RETAINED ENTERED ON 03/23/2012

       Attorney:  ANDREW BENSON
04/04/2012 ORDER -  SPECIAL ASSIGNMENT ENTERED ON 04/04/2012
       M MICHAELA MURPHY , JUSTICE
04/05/2012 WARRANT -  ON COMP/INDICTMENT EXECUTED BY AGENCY ON 04/05/2012 at 08:16 p.m.

       Defendant Not Present in Court
04/09/2012 MOTION -  MOTION TRANSPORT DEFENDANT FILED BY STATE ON 04/09/2012

04/09/2012 MOTION -  MOTION TRANSPORT DEFENDANT GRANTED ON 04/09/2012
       M MICHAELA MURPHY , JUSTICE
       COPY TO PARTIES/COUNSEL
04/09/2012 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 04/09/2012

04/12/2012 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 04/12/2012
       M MICHAELA MURPHY , JUSTICE
       COPY TO PARTIES/COUNSEL
04/12/2012 Party(s):  MICHAEL T YOUNG

Attorney: PAMELA AMES
DA: LEANE ZAINEA
Defendant Present in Court

READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT. 21 DAYS TO FILE MOTIONS
08/20/2012 Charge(s): 1
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 04/13/2012


09/21/2012 Charge(s): 1
MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 09/21/2012

LISA WHITTIER
10/03/2012 OTHER FILING - OTHER DOCUMENT FILED ON 10/03/2012


DA: ANDREW BENSON
STATE'S SUPPLEMENTAL MEMORANDUM IN REPLY TO DEFENDANT'S MOTION TO SUPPRESS
10/31/2012 Charge(s): 1
MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 10/08/2012
M MICHAELA MURPHY , JUSTICE
COPY TO PARTIES/COUNSEL
10/31/2012 MOTION - MOTION FOR EXTENSION OF TIME FILED BY DEFENDANT ON 10/15/2012


Attorney: PAMELA AMES
REQUEST FOR ONE WEEK TO SUBMIT MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS
10/31/2012 MOTION - MOTION FOR EXTENSION OF TIME GRANTED ON 10/21/2012
M MICHAELA MURPHY , JUSTICE
COPY TO PARTIES/COUNSEL
10/31/2012 Party(s): MICHAEL T YOUNG
ATTORNEY - WITHDRAWN ORDERED ON 10/08/2012


Attorney: LISA WHITTIER
11/21/2012 HEARING - STATUS CONFERENCE SCHEDULED FOR 11/27/2012 at 03:00 p.m.
M MICHAELA MURPHY , JUSTICE
11/21/2012 HEARING - STATUS CONFERENCE NOTICE SENT ON 11/21/2012


11/27/2012 ORDER - COURT ORDER FILED ON 11/21/2012
M MICHAELA MURPHY , JUSTICE
DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
11/27/2012 ORDER - COURT ORDER ENTERED ON 11/27/2012


11/27/2012 HEARING - MOTION TO SUPPRESS HELD ON 09/13/2012
M MICHAELA MURPHY , JUSTICE
Attorney: PAMELA AMES
Reporter: TAMMY DROUIN
Defendant Present in Court
11/27/2012 MOTION - MOTION TO SUPPRESS DENIED ON 11/21/2012
M MICHAELA MURPHY , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST: _____
                    Clerk